**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE (L.M.H.) an Individual | : | Case No. |
| | : | |
| Plaintiff, | : | Judge |
| | : | |
| vs. | : | |
| | : | |
| RED ROOF INNS, INC. | : | |
| Serve: | : | |
| Corporation Service Company | : | |
| 3366 Riverside Drive, Suite 103 | : | |
| Upper Arlington, OH 43221 | : | |
| | : | |
| and | : | |
| | : | |
| RRF HOLDING COMPANY, LLC | : | |
| Serve: | : | |
| Corporation Service Company | : | |
| 3366 Riverside Drive, Suite 103 | : | |
| Upper Arlington, OH 43221 | : | |
| | : | |
| and | : | |
| | : | |
| RED ROOF FRANCHISING, LLC | : | |
| Serve: | : | |
| Corporation Service Company | : | |
| 3366 Riverside Drive, Suite 103 | : | |
| Upper Arlington, OH 43221 | : | |
| | : | |
| and | : | |
| | : | |
| RRI WEST MANAGEMENT, LLC | : | |
| Serve: | : | |
| Capitol Corporate Services, Inc. | : | |
| 4568 Mayfield Rd, Ste 204 | : | |
| Cleveland, OH 44121 | : | |
| | : | |
| and | : | |
| | : | |
| FMW RRI II LLC | : | |
| Serve: | : | |
| Corporation Service Company | : | |
| 3366 Riverside Drive, Suite 103 | : | |
| Upper Arlington, OH 43221 | : | |

1

|                                      |     |
| ------------------------------------ | --- |
|                                      | :   |
| and                                  | :   |
|                                      | :   |
| FMW RRI Opco LLC                     | :   |
| Serve:                               | :   |
| Corporation Service Company          | :   |
| 50 West Broad Street                 | :   |
| Columbus, OH 43215                   | :   |
|                                      | :   |
| and                                  | :   |
|                                      | :   |
| BW RRI II LLC                        | :   |
| Serve:                               | :   |
| Corporation Service Company          | :   |
| 251 Little Falls Drive               | :   |
| Wilmington, Delaware 19808           | :   |
|                                      | :   |
| Defendants.                          | :   |

## ORIGINAL COMPLAINT

COMES NOW Plaintiff Jane Doe (L.M.H.), by and through the undersigned counsel, and respectfully submits her original complaint for damages and makes the following averments.

## SUMMARY

1.     Jane Doe (L.M.H.) files this civil lawsuit seeking compensation for the harm she suffered as a result of the sex trafficking she endured in a hotel owned, operated, maintained, and controlled by Defendants and their agents and employees.

2.     Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.[1]

---

[1] 18 U.S.C. §1591; 22 U.S.C. § 7102.

3.      Commercial sex act means any sex act, on account of which anything of value is given to or received by any person.[2] Traffickers or 'pimps' use threats, violence, manipulation, lies, debt, bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

4.      Sex trafficking has become a public health crisis that has reached epidemic proportions in the United States. It is now widely recognized, including by Congress and many state legislatures, that combating sex trafficking requires more than just criminal penalties for pimps and sex buyers.

5.      Since 2003, federal law, through the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §1581, et seq, has provided victims of sex trafficking a civil remedy against perpetrators of criminal sex trafficking.

6.      In 2008, Congress recognized the need to extend liability beyond sex buyers and sellers and intentionally expanded the scope of the TVPRA to reach those who—while not criminally liable under the TVPRA—financially benefit from participation in a venture that they know or *should know* engages in criminal sex trafficking.

7.      As discussed herein, Defendants derived financial benefit from facilitating sex trafficking by providing venues where traffickers could exploit victims, including victims like Jane Doe (L.M.H.), with minimal risk of detection or interruption.

8.      Defendants continued supporting traffickers, including Jane Doe (L.M.H.)'s trafficker, despite evident and apparent signs of widespread and ongoing sex trafficking at its hotels and specifically at the Red Roof Inn Plus ("RRI") located at 5823 Wilson Avenue, St. Louis, Missouri 63110. Defendants were, therefore, knowingly

---

[2] 18 U.S.C. §1591(e)(3).

receiving a benefit from participation in a venture that Defendants knew or should have known was engaged in sex trafficking.

## PARTIES

9.     Jane Doe (L.M.H.) (DOB 10/21/1999) is a natural person who is currently a resident and citizen of Colorado.

10.     Defendant Red Roof Inns, Inc. d/b/a Red Roof Inn ("RRI Inc.") is a Delaware corporation with its principal place of business in Ohio. It can be served by its registered agent Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, OH 43221.

11.     RRF Holding Company, LLC ("RRF Holding") is a Delaware corporation with its principal place of business in Ohio. It can be served by its registered agent: Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, OH 43221. RRF Holding is a direct subsidiary of RRI Inc.

12.     Defendant Red Roof Franchising, LLC d/b/a Red Roof Inn ("RRI Franchising") is a Delaware Limited Liability Company with its principal office in Ohio. It can be served by its registered agent Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, OH 43221. RRI Franchising is a direct subsidiary of RRF Holding Company, LLC, whose parent company is RRI Inc.

13.     Defendant RRI West Management, LLC d/b/a Red Roof Inn ("RRI West Management") is a Delaware Limited Liability Company. It can be served by its registered agent Capitol Corporate Services, Inc., 4568 Mayfield Rd, Ste 204, Cleveland, OH 44121. RRI West Management shares a common parent company with RRI Inc. RRI West Management is an affiliate of RRI Inc. and RRI Franchising.

4

14.     RRI Inc., RRF Holding, RRI Franchising, and RRI West Management, are referred to collectively as the "RRI Brand Defendants." Upon information and belief, they operated, controlled, and/or managed the RRI located at 5823 Wilson Avenue, St. Louis, Missouri 63110.

15.     Defendant FMW RRI II LLC d/b/a Red Roof Inn is a Delaware Limited Liability Company. Upon information and belief, it owned, operated, controlled, and/or managed the RRI located at 5823 Wilson Avenue, St. Louis, Missouri 63110 from September 2011 to May 2015. It can be served by its registered agent Corporation Service Company, 3366 Riverside Drive, Suite 103, Upper Arlington, OH 43221. Upon information and belief, FMW RRI II LLC is an affiliate of the RRI Brand Defendants and is subject to common ownership and control with these entities under the Westmont Hospitality Group. Upon information and belief, this entity was used as part of a coordinated effort to recapitalize RRI corporate properties while leaving them under the control of the RRI Brand Defendants.

16.     Defendant FMW RRI Opco LLC d/b/a Red Roof Inn is a Delaware Limited Liability Company. Upon information and belief, it owned, operated, controlled, and/or managed the RRI located at 5823 Wilson Avenue, St. Louis, Missouri 63110. It can be served by its registered agent: Corporation Service Company, 50 West Broad Street, Columbus, OH, 43215. Upon information and belief, FMW RRI Opco LLC is a corporate affiliate of the RRI Brand Defendants and is subject to common ownership and control with these entities under the Westmont Hospitality Group. Upon information and belief, this entity was used as part of a coordinated effort to recapitalize RRI corporate properties while leaving them under the control of the RRI Brand Defendants.

17.     Defendant BW RRI II LLC is a Delaware Limited Liability Company. Upon information and belief, it owned, operated, controlled, and/or managed the RRI located at 5823 Wilson Avenue, St. Louis, Missouri 63110 from May 2015 to present. It can be served by its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Upon information and belief, BW RRI II LLC is an affiliate of the RRI Brand Defendants and is subject to common ownership and control with these entities under the Westmont Hospitality Group.

18.     FMW RRI II LLC, FMW RRI Opco LLC, and BW RRI II LLC are referred to collectively as the "RRI St. Louis Entities."

19.     The RRI Brand Defendants and the RRI St. Louis Entities are referred to collectively as the "RRI Defendants."

## JURISDICTION AND VENUE

20.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

21.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because, pursuant to 28 U.S.C. §§ 1391(c)(2) and 1391(d), at least one Defendant is a resident of the Southern District of Ohio, and all Defendants are residents of Ohio.

22.     The RRI Brand defendants have the same principal place of business, which is in New Albany, Ohio, within the Southern District of Ohio. Therefore, each is a resident of the Southern District of Ohio for the purpose of § 1391(b)(1).

23.     Under 28 U.S.C. §§ 1391(c)(2), the RRI St. Louis Entities are residents of Ohio for the purpose of § 1391(b)(1) because the Court has personal jurisdiction over the RRI St. Louis Entities.

24. Under 28 U.S.C. §§ 1391(d), the RRI St. Louis Entities are residents of Ohio for the purpose of § 1391(b)(1) because if the Southern District of Ohio were a separate state, the contacts of the RRI St. Louis Entities with the district would be sufficient to subject them to personal jurisdiction.

25. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Ohio.

26. Each of the RRI Defendants participated in a joint venture operating the subject hotel from a central location at the RRI corporate offices in New Albany, Ohio, within the Southern District of Ohio. On information and belief:

    a. The relationship between the RRI Defendants was centered at the RRI corporate offices in the Southern District of Ohio.

    b. The RRI Defendants signed agreements with one another related to the subject hotel from RRI corporate offices in the Southern District of Ohio.

    c. The RRI Defendants exercised joint control over operations of the subject hotel from a central location at RRI corporate offices in the Southern District of Ohio.

    d. The RRI Defendants distributed revenue earned from the subject hotel among themselves from RRI corporate offices in the Southern District of Ohio.

    e. The RRI Defendants developed policies for the subject hotel from RRI corporate offices in the Southern District of Ohio.

    f. The RRI Defendants communicated with one another regarding operation of the subject hotel from RRI corporate offices in the Southern District of Ohio.

27. The RRI St. Louis Entities were RRI corporate affiliates who participated in a joint venture with the RRI Brand Defendants centered in the Southern District of Ohio as described above and were parties to franchising and management agreements with the

RRI Brand Defendants, thereby operating the subject RRI, in substantial part, in Ohio, as described above.

28.    As a separate and additional remedy for those exploited as children, in 18 U.S.C. § 2255, Congress authorized any person who, while a minor, was a victim of a violation of 18 U.S.C. § 1591, to sue in any appropriate district court to recover damages. This provision authorizes nationwide service of process and nationwide jurisdiction.

29.    L.M.H. was trafficked as a minor child, thereby making 18 U.S.C. § 2255 applicable.

## **FACTS**

### I.    **Jane Doe (L.M.H.) was a Victim of Unlawful Sex Trafficking at a Hotels Owned, Operated, Managed, and Controlled by Defendants.**

30.    Jane Doe (L.M.H.)'s trafficking began in 2014 when she was just fourteen years old. Her trafficker controlled her through physical violence and force and made her engage in commercial sex acts for his financial benefit. Her trafficker posted ads of her online without her consent. She did not want to engage in commercial sex acts but she feared repercussions from her trafficker if she were to leave.

31.    Jane Doe (L.M.H.) was repeatedly trafficked in Defendants' hotel and each Defendant facilitated her trafficking.

32.    From 2014 through 2017, Jane Doe (L.M.H.) was trafficked at the RRI located at 5823 Wilson Avenue, St. Louis, Missouri 63110 ("St. Louis RRI") on multiple occasions. Upon information and belief, the St. Louis RRI was a corporate property. At all relevant times, it was owned and/or leased by RRI St. Louis Entities, who are affiliates of the RRI Brand Defendants and subject to control by the RRI Brand Defendants, and who also entered into franchising and management agreements with the RRI Brand

Defendants. Both the RRI St. Louis Entities and the RRI Brand Defendants participated directly in operation of the St. Louis RRI and employed staff responsible for operation of the St. Louis RRI, with the RRI Brand Defendants employing management staff.

33.    Jane Doe (L.M.H.)'s trafficking had profound effects on her, consistent with "red flags" of trafficking that are well-recognized in the hospitality industry.[3] These effects were obvious and apparent to the staff and management of the St. Louis RRI including effects on L.M.H.'s appearance, demeanor, movements throughout the hotel, and her interactions with her trafficker, hotel staff, and others. Observing these effects provided Defendants with notice that L.M.H. was being continually subjected to coercion, control, and exploitation.

34.    Jane Doe (L.M.H.) remained under the continuous control of her trafficker through at least 2017.

## II.    The Hotel Industry's Role in Sex Trafficking and Defendants' Knowledge of the Problem.

35.    The widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what the Defendants knew or should have known regarding the trafficking at their hotel properties, the subject location, and the trafficking of Jane Doe (L.M.H.).

36.    Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[4] For years, sex traffickers have been able to reap their

---

[3] *See supra* section II and accompanying footnote for discussion of "red flags" of trafficking.
[4] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune (April 2019),https://fortune.com/2019/04/14/human-sex-trafficking-us-slavery/ (citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council). "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id.*

profits with little risk when attempting to operate within hotels.[5] In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[6] Hotels have been found to account for over 90% of the commercial exploitation of children.[7]

37.     Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Defendants, on best practices for identifying and responding to sex trafficking.

38.     Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, and EPCAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[8]

39.     Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of, include

---

[5] *See Human Trafficking in the Hotel Industry*, Polaris Project (Feb. 10, 2016), https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; *see also* Eleanor Goldberg, *You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic*, Huffington Post (June 2016), http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-trafficking-victimslife_us_57714091e4b0f168323a1ed7.

[6] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hotel Industry*, Cornell Hotel Report (Oct. 2015), https://scholarship.sha.cornell.edu/cgi/viewcontent.cgi?article=1222&context=chrpubs.

[7] *See* Erika R. George and Scarlet R. Smith, *In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking and Modern Slavery*, 46 N.Y.U. J. Int'l L. & Pol. 55, 66-67 (2013).

[8] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf (last visited April 13, 2023);National Center for Missing and Exploited Children, https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 13, 2023); Love 146, *Red Flags for Hotel & Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf (last visited April 13, 2023); Texas Attorney General, *Human Trafficking Red Flags*, https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 13, 2023).

learning to identify warning signs and indicators of sex trafficking, including but not limited to:[9]

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

- Individuals show signs of physical abuse, restraint, and/or confinement;

- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

- Individuals lack freedom of movement or are constantly monitored;

- Individuals avoid eye contact and interaction with others;

- Individuals have no control over or possession of money or ID;

- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

- Individuals have few or no personal items—such as no luggage or other bags;

- Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

- A group of girls appears to be traveling with an older female or male;

- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

- Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

- Possession of bulk sexual paraphernalia such as condoms or lubricant;

---

[9] *See Id.*

- Possession or use of multiple cell phones; and

- Possession or use of large amounts of cash or pre-paid cards.

40.     The signs of sex trafficking in a hotel environment follow well-established patterns and can easily be detected by appropriately trained staff. Toolkits specific to the hotel industry have been developed, which help hotel staff in every position identify and respond to signs of sex trafficking.[10] From check-in to check-out, there are indicators that traffickers and their victims routinely exhibit during their stay at a hotel.

41.     The RRI Defendants knew commonly occurring signs of illegal activity associated with sex trafficking. For example, no later than 2010, RRI advised hotel management that staff should constantly be on the lookout for unusual or irregular activity on the property, including multiple guests arriving/leaving a guestroom for short durations of time or a pimp or partner who sits in the lobby or a vehicle while online setting up prostitution appointments for a property. The policy also identified signs that housekeeping staff should look for when entering guest rooms, which were consistent with the recognized "red flags" of trafficking in the hotel industry.

42.     The RRI Defendants knew and communicated to franchisees and hotel management that trafficking was often associated with other criminal activity, including illegal drugs and assaults.

43.     The relationship between a pimp and a prostitute is inherently coercive, and the United States Department of Justice and other agencies and organizations have recognized that most individuals involved in prostitution are subject to force, fraud, or

---

[10] Department of Homeland Security, *Blue Campaign Toolkit*, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

coercion.[11] It is also well understood that "prostitution," "sex trafficking," and "child sex trafficking" involve a single common denominator, the exchange of sex for money.

44.    The definition of sex trafficking in the TVPRA under 18 U.S.C. §1591(a)(1) incorporates the definition of commercial sex act. Defendants understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Thus, Defendants knew or should have known that signs of commercial sex (prostitution) activity in their hotels were in fact signs of sex trafficking.[12]

45.    Red Roof Inn believed that pimps should be treated as synonymous with traffickers and understood that the presence of pimps at a hotel property was an indication of sex trafficking at the property.

46.    All Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their hotel properties, when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

47.    The most effective weapon against sexual exploitation and human trafficking is education and training.[13]  As ECPAT concluded:

> The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out, there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[14]

---

[11] *See, e.g.*, *A National Overview of Prostitution and Sex Trafficking Demand Reduction Efforts, Final Report*, https://www.ojp.gov/pdffiles1/nij/grants/238796.pdf; *Prostitution and Trafficking in Women: An Intimate Relationship*, https://www.ojp.gov/ncjrs/virtual-library/abstracts/prostitution-and-trafficking-women-intimate-relationship.

[12] *Id.*

[13] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).

[14] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023). *See also* Carolin L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.

48.    This same conclusion is echoed by others who seek to eliminate sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[15]  In reference to companies like the Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

49.    Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of a hotel chain to continue generating revenue from traffickers without taking necessary steps to identify and prevent trafficking in its hotels is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

50.    Each of the Defendants had a responsibility to adopt, implement, and adequately enforce policies to avoid facilitating sex trafficking and to train hotel staff to identify and respond to "red flags" of sex trafficking.

## III.    Sex Trafficking Has Long Been Prevalent at RRI Branded Properties, and Defendants Have Known About It.

51.    Defendants' actual knowledge is *not* limited to a general awareness of the problem of sex trafficking in the hotel industry. Each of the Defendants has known, since well before Jane Doe (L.M.H.)'s trafficking, that sex trafficking was ongoing and widespread at RRI branded properties including the subject properties.

---

[15] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

52.     Use of RRI branded properties for sex trafficking is well known to the Defendants. RRI hotels are one of the five chains most frequently identified as a site of sex trafficking in federal criminal complaints.[16]

53.     Unfortunately for Jane Doe (L.M.H.), Defendants have failed, at all levels, to take appropriate action in response to their knowledge of widespread and ongoing human trafficking in their hotels. Instead, they have continued financially benefiting by providing venues for the sexual exploitation of victims like Jane Doe (L.M.H.).

     **a.**    **Sex Trafficking at RRI Branded Hotels was well Known by Defendants.**

54.     Upon information and belief, each of the Defendants monitored criminal activity occurring at RRI branded hotels and were aware of activity indicating commercial sex, sex trafficking and/or related crimes occurring at those branded hotels, including the specific hotel properties where Jane Doe (L.M.H.) was trafficked.

55.     Scores of news stories from across the US highlight RRI Brand Defendants' facilitation of sex trafficking and certainly establishes that Defendants knew, or should have known, of the use of RRI branded hotels for sex trafficking.

56.     By way of example, the Woburn, Massachusetts Daily Times reported as early as February 2000 that its Red Roof Inn was facing closure by the city licensing commission as a result of pervasive criminal activity, prostitution, and sex trafficking. [17] Such criminal conduct continued unabated until at least 2012, when Vice President of Operations for Red Roof Inn, Joesph Maddux was forced to appear before the Licensing

---

[16] https://traffickinginstitute.org/wp-content/uploads/2022/01/2018-Federal-Human-Trafficking-Report-Low-Res.pdf; https://traffickinginstitute.org/wp-content/uploads/2022/01/2020-Federal-Human-Trafficking-Report-Low-Res.pdf

[17] https://woburnpubliclibrary.org/wp-content/uploads/2019/03/Woburn-Daily-Times-1904-1980-Non-consecutive-1995-2014.pdf l

Commission. Responding to reports of dangerous men using prostitutes as young as fourteen (14) at the Woburn Red Roof Inn and 118 police reports from 2011 alone, Maddux assured the Licensing Commission that Red Roof Inn's President and legal department had been updated and outlined some of the steps the company was considering to address criminal activity including prostitution at its branded properties:[18]

- Installation and prominent display of new security systems providing 24-hour monitoring;

- Institution of nation-wide changes to its registration policies and the information obtained at check-in;

- Increased physical security of the Red Roof Inn location;

- Elimination of smoking floor(s); and

- Hotel upgrades and price increases to price rooms beyond the criminal clientele.

Sadly, there is no evidence that any such steps were taken in Woburn or across the country. In July 2020, the Woburn License Commission again instituted action against the Red Roof Inn location following over 150 police incident reports including those for "human trafficking, prostitution and drugs…"[19]

57.     Information that has become public through news stories establishes the entrenched and pervasive nature of RRI's role in providing a venue where sex trafficking has continued unabated for years. Among notable press involving the frequent use of RRI branded hotels for illegal activity, the following was noted:

- In 2010, a man and woman appeared in court on charges of trafficking a 14-year-old Milwaukee girl at a Red Roof Inn in Oak Creek, Wisconsin. At the Red Roof Inn, the traffickers gave the girl

---

[18]http://homenewshere.com/daily_times_chronicle/news/woburn/article_99cddca6-5983-11e1-8393-0019bb2963f4.html

[19] https://woburnma.gov/wp-content/uploads/2020/08/7-23-20-License-Commission-minutes.pdf

marijuana to smoke and then took pictures of her naked, which were put on a local website.[20]

- In 2010, 2 were charged with transporting a minor to engage in prostitution after a 17-year-old California runaway was trafficked at Red Roof Inn locations in New York and Maryland.[21]

- In 2012, a Pennsylvania man was indicted by a federal grand jury on charges of sex trafficking involving a 16-year-old girl who was trafficked at a New Jersey Red Roof Inn in May 2012.[22] In 2014 he was sentenced to 10 years in federal prison.[23]

- In 2012, A Minneapolis police officer investigating juvenile sex trafficking activity spotted an ad on the website Backpage.com that depicted the image of a provocatively dressed young woman offering "unrushed service, full of pleasure." The officer called the number on the ad and spoke with a female who said she was at the Red Roof Inn in Woodbury.[24]

- In 2012, a Rochester man and woman were charged in a sex trafficking case of a minor. Investigators determined that two customers paid to have sex with the victim and the woman arrested at the Red Roof Inn.[25]

- In 2012, two teenage girls were human trafficking victims at a RRI in Charlotte, North Carolina. In subsequent interviews with other human trafficking victims, they alleged their pimps would pay RRI managers and maids to not report illegal activities.[26] RRI eventually pulled its brand from the hotel. [27]

---

[20] John Diedrich, *2 face federal sex-trafficking charges*, Milwaukee Journal Sentinel (June 16, 2010), https://archive.jsonline.com/news/crime/96508359.html/

[21] https://www.washingtonexaminer.com/teen-prostituted-held-against-her-will-in-md-and-va-hotels-feds-say

[22] Press Release, The Federal Bureau of Investigation, Pennsylvania Man Charged with Sex Trafficking of a Minor (June 27, 2012), https://archives.fbi.gov/archives/newark/press-releases/2012/pennsylvania-man-charged-with-sex-trafficking-of-a-minor

[23] Michaelangelo Conte, *Man charged with sex trafficking a teen he met in Secaucus takes plea*, nj.com (Mar. 28, 2014), https://www.nj.com/hudson/2014/03/man_originally_charged_with_sex_trafficking_a_16-year-old_he_met_in_secaucus_takes_a_plea.html.

[24] Mike Longaecker, *Police: Sex trafficking victim turns up at Woodbury hotel*, Republican Eagle (August 17, 2012), https://www.republicaneagle.com/news/public_safety/police-sex-trafficking-victim-turns-up-at-woodbury-hotel/article_88eac778-73b4-50cb-ac65-182279d50948.html

[25] Department of Justice, *ROCHESTER MAN AND WOMAN CHARGED IN SEX TRAFFICKING CASE* (Dec. 14, 2012), https://www.justice.gov/archive/usao/nyw/2012/TwoCharged.pdf

[26] *FBI investigating teen human trafficking at Charlotte hotel*, WBTV3 (Sept. 17, 2015), https://www.wbtv.com/story/30058536/fbi-investigating-teen-human-trafficking-at-charlotte-hotel/.

[27] *Id.*

- In 2013, a 50-year-old man was charged with prostitution and human trafficking, for forcing a woman to perform sex acts against her will at the Red Roof Inn on Eisenhower Boulevard in Pennsylvania.[28]

- In 2013, a local news station investigated a Florida Red Roof Inn because of the high volume of search warrants that continued to pop up for the hotel, including multiple warrants that reported a high volume of prostitution activity at the hotel.[29]

- In 2013, a Lubbock grand jury indicted four suspects arrested during a prostitution sting. Police discovered two underage victims during their sting operation at the Red Roof Inn.[30]

- The Knox County Sheriff's Office arrested a Knoxville man for human trafficking at a Red Roof Inn in 2013.[31]

- In 2014, a Cincinnati man plead guilty in U.S District Court to locking up women in his Avondale home, then driving them to Red Roof Inn in Louisville where he forced them into prostitution.[32]

- In 2014, a Rhode Island man pled guilty to attempted sex trafficking after he was accused of trying to procure customers to have sex with a 23-year-old woman in the Red Roof Inn on Wolf Road on Aug. 22, 2012.[33]

- In 2014 a man was arrested by the FBI in Orlando for holding a 15-year-old girl in a Phoenix RRI and selling her for sex. He was later sentenced to 8 years in prison.[34]

- A Mississippi man was arrested in 2014 on human trafficking charges for trafficking a 16-year-old out of a Red Roof Inn in Madison County. He later pled guilty to human trafficking and was sentenced to 25 years in prison.[35]

---

[28] Brittany Miller, *Man charged in prostitution ring headed to Dauphin County court*, Penn Live Patriot News(October 9, 2013), https://www.pennlive.com/midstate/2013/10/post_625.html

[29] https://www.abcactionnews.com/news/motel-frequently-involved-in-criminal-activity-sees-more-than-200-calls-for-service-this-year

[30] *4 indicted on prostitution charges after Red Roof Inn sting*, KCBD News 11 (August 28, 2013), https://www.kcbd.com/story/23272377/4-charged-with-prostitution-offenses-after-red-roof-inn-sting/

[31] https://www.endslaverytn.org/news/knoxville-man-faces-human-trafficking-charges-newsarticle

[32] *https://www.fox19.com/story/27390036/avondale-man-pleads-guilty-to-sex-trafficking-in-louisville/*.

[33] https://www.timesunion.com/local/article/Sex-traffic-case-ends-in-plea-5440052.php

[34] Jamee Lind, *Phoenix man gets 8 years for selling teen for sex*, The Republic (Mar. 30, 2015), https://www.azcentral.com/story/news/local/phoenix/2015/03/30/phoenix-man-sex-trafficking-sentence-abrk/70691190/.

[35] Mary Grace Eppes, *Man sentenced for human trafficking in Madison Co.*, WLBT3 (Jan. 15, 2015), https://www.wlbt.com/story/27862158/man-sentenced-for-human-trafficking-in-madison-co/.

- In 2015, Police arrested 15 men in a sex-with-minors sting at a Red Roof Inn in Woodbury, Wisconsin.[36] The investigation started in 2014 when a man was arrested at the RRI after responding to a Craigslist ad for sex with a 32-year-old and fondling of her deaf daughter.[37]

- In 2016, 2 were charged with human trafficking involving a minor following their arrest at a Red Roof Inn in Louisville, Kentucky.[38]

- In 2016, 2 were charged in a human trafficking scheme after police arrested them at a Red Roof Inn in Jessup, Maryland.[39]

- In 2016, 2 were arrested in New Jersey and accused of running an interstate human trafficking ring out of a Red Roof Inn in Lawrence.[40]

- In 2016, a man was sentenced to ten years for trafficking a 15-year-old girl at two motels, including a Red Roof Inn in Enfield, Connecticut.[41]

- In 2016, a man was sentenced for trafficking a minor at a Red Roof Inn in Rochester, New York for an eight-month period in 2012.[42]

- In 2016, two were arrested on human trafficking charges for forcing a woman into prostitution at an Indiana Red Roof Inn.[43]

- In 2016, a man was sentenced on human trafficking charges after forcing a woman into prostitution at hotels, including a Red Roof Inn in Massachusetts.[44]

---

[36] Mathias Baden, *UPDATE: Police arrest 15 men in sex-with-minors sting at Red Roof Inn*, Republican Eagle (Sept. 23, 2015), https://www.republicaneagle.com/news/public_safety/update-police-arrest-15-men-in-sex-with-minors-sting-at-red-roof-inn/article_e48299f7-e13d-5c86-8e9f-f7faf22a8998.html.
[37] *Id.*
[38] https://www.wave3.com/story/31910401/2-charged-with-human-trafficking-involving-juvenile
[39] https://www.wbaltv.com/article/2-men-charged-in-howard-county-human-trafficking-scheme/7148473#
[40] https://www.trentonian.com/2016/09/01/new-york-man-accused-in-lawrence-sex-rings-boasts-about-600k-manhattan-home/
[41] https://www.courant.com/2016/11/14/hartford-man-sentenced-to-prison-for-sex-trafficking-of-15-year-old-girl/
[42] https://www.democratandchronicle.com/story/news/2016/01/14/rochester-man-sentenced-sex-trafficking/78770804/
[43] https://www.jconline.com/story/news/crime/2016/12/29/court-docs-alleged-pimps-paid-victim-heroin/95952012/
[44] https://www.newburyportnews.com/news/man-gets-5-to-8-years-in-prison-for-human-trafficking/article_79f32b03-3e96-5360-af02-76c53e249dec.html

- In 2016, arrests were made after investigation of a human trafficking operation operating out of hotels, including a Red Roof Inn in Illinois.[45]

- In 2016, three were arrested on prostitution charges at a Red Roof Inn in Kentucky.[46]

- In 2017, a man was charged with sex trafficking victims at a Red Roof Inn in Missouri.[47]

- In 2017, there were six arrests following a prostitution bust at a Red Rood Inn in Ohio.[48]

- In 2017, a man pled guilty to sex trafficking a 14-year-old girl at a Red Roof Inn in Kentucky.[49]

- In 2017, twenty-three people were arrested in a human trafficking investigation for trafficking eight girls, between the ages of 14 and 17, at Stockton, California hotels, including the Red Roof Inn.[50]

- In 2017, two were arrested for sex trafficking children, including at a Red Roof Inn in Ohio.[51]

- In 2018, two men were indicted on charges of child sex trafficking after a 15-year-old girl was found at a Red Roof Inn in Delaware.[52]

- In 2018, two were charged for running a sex trafficking operation out of an Illinois Red Roof Inn.[53]

- In 2018, a Virginia court upheld a defendant's conviction for sex-trafficking offenses related out of trafficking that occurred at a Virginia Red Roof Inn.[54]

---

[45] https://www.shawlocal.com/2016/01/18/joliet-hotel-among-meeting-places-in-rappers-sex-trafficking-ring/alh59bo/
[46] https://www.wdrb.com/news/crime-reports/louisville-police-arrest-three-during-undercover-prostitution-investigation/article_12b5448c-2857-5b6b-ba04-0aba80d5b5da.html
[47] https://www.stltoday.com/news/local/crime-and-courts/man-charged-with-sex-trafficking-at-red-roof-inn-in-st-louis/article_4c70ac45-ac34-5d28-bd3c-92efde095381.html
[48] https://www.news5cleveland.com/news/local-news/oh-summit/prostitution-bust-summit-co-investigators-fbi-arrest-six-at-springfield-township-red-roof-inn
[49] https://www.courier-journal.com/story/news/crime/2017/06/07/louisville-man-pleads-guilty-sex-trafficking-14-year-old/377971001/
[50] https://www.kcra.com/article/23-arrested-in-san-joaquin-county-human-trafficking/9588063
[51] https://www.cbs58.com/news/two-pastors-arrested-for-sex-trafficking-children
[52] https://www.acenewstoday.com/two-delaware-men-indicted-on-charges-of-child-sex-trafficking/
[53] https://www.wcia.com/news/local-news/two-people-face-charges-for-involvement-in-trafficking-ring/
[54] https://caselaw.findlaw.com/court/va-court-of-appeals/1944156.html

58.     Ultimately, several hundred traffickers involved with hundreds of victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution out of RRI branded properties.

59.     Upon information and belief, each Defendant monitored criminal activity occurring at RRI branded hotels and thus was aware of these incidents and many similar incidents at RRI properties around the country, including the subject hotel.

60.     Upon information and belief, upper-level executives of the RRI Brand Defendants monitored news stories and law-enforcement reports regarding criminal activity at RRI branded hotels. Upon information and belief, the public relations department for the RRI Brand Defendants would circulate communications discussing criminal activity, including human trafficking and prostitution, at RRI branded properties.

61.     No later than 2013, the RRI Brand Defendants began carefully monitoring online reviews and other customer feedback for RRI branded properties. Indeed, top leadership of the RRI Brand Defendants was "obsessed" with review of customer feedback, including online reviews.[55]

62.     Leadership of the RRI Brand Defendants would receive compiled reviews from Reputology, an online-review aggregator, that compiled reviews for Red Roof Inns all over the country, including the subject locations.[56] RRI Brand Defendants responded to directly or required other Defendants to respond to reviews posted on review websites.

63.     Based on information and belief, the Defendants managed and monitored on-line reviews of RRI hotel locations including the following samples:

---

[55] https://www.usatoday.com/story/travel/hotels/2013/04/05/red-roof-hotel-outlets/2056817/
[56] https://www.e-marketingassociates.com/blog/use-the-new-hootsuite-reputology-app-to-monitor-online-reviews

- 2007 Tripadvisor review from New Jersey states "This place is a horrible hotel. First, I check in, drop off my luggage, and go get something to eat. I come back to find my room wide open, so I go to the front desk to report it, where i get the "Well, maybe you didnt close the door" and "I'm the only one here, so". The next night, a local prostitute moved in next door and started peddling her wares, so there was traffic all night, and even worse, she was a screamer. So I go to the front desk to report this, where I find the attendant asleep. Don't waste your money here."[57]

- 2008 Expedia review out of California states "Prostitutes were in the local area and were using this hotel for their "business meetings"." [58]

- 2008 Tripadvisor review in Pennsylvania states "This place is not only dirty but it is unsafe. The women of this town must use this hotel as hunting ground. The drug dealers are happy to see anyone check in because the think it is an instant sale. Cops swarm the parking lot continuously. Men walk the halls all hours of the day and night looking for drugs. Hookers walk the halls looking for their next guy. One hooker by the name of "Kimmy" approached my husband and wanted him to pay for sex with her when he refused she with with the next available guy. About 2 in the morning she is knocking on our door asking for my husband and wanted him to go party with him. I kicked "Kimmy" out and called the desk. They did nothing. Are the getting a pay off from the drug dealers and hookers?"[59]

- 2008 Expedia review from Ohio states "...To top it off, I am fairly convinced I saw several prostitutes staying there offering thier services to the ODOT workers who were also guests....."[60]

- 2008 Tripadvisor review from Washington states "Hookers passed out in the hall, bathrooms that flooded, topped off by the SWAT team bursting in down the hall at 2 am. This hotel was so dangerous that we complained about the drunk We didn't even have our luggage out of the rental car before two guys got in a screaming fight and ran right past us. It got better a few hours later when a hooker passed out in the hall in front of the room next door and our sleep was interrupted when the SeatTac SWAT team arrived after a dispute between a lady of the evening and a hotel guest that involved a weapon. . . . This is a

---

[57] https://www.tripadvisor.com/Hotel_Review-g46649-d223813-Reviews-Red_Roof_Inn_Mt_Laurel-Mount_Laurel_New_Jersey.html
[58] https://www.expedia.com/Stockton-Hotels-Red-Roof-Inn-Stockton.h790032.Hotel-Reviews
[59] https://www.tripadvisor.com/Hotel_Review-g30029-d96250-Reviews-Red_Roof_Inn_Allentown_Airport-Allentown_Pennsylvania.html
[60] https://www.expedia.com/Cincinnati-Hotels-Red-Roof-Inn-Cincinnati-Northeast-Blue-Ash.h17551.Hotel-Reviews

DANGEROUS place to stay and there is a reason it is cheaper then the other hotels on the same street."[61]

- 2010 Tripadvisor review from Virginia states "For the price you pay, this motel is on of the worst i have seen in this area...What you do get is hallways smelling like marijoana and othe illegall drugs. prostitutes renting rooms, drug dealers hanging around the motel, etc. I can't believe that fairfax county police are not aware of these activities. Stay away from this motel if you don't like to expose yourself and your family to such activities mentioned above." [62]

- 2010 Tripadvisor review from South Carolina states "The website lies to you. Nothing but pimps and hookers at this hotel. Had a drunk person knock on our door at 2am then the phone rings someone asking for a woman. No toilet paper. Room was dirty. Never again will I use this hotel chain again."[63]

- 2010 Expedia review from California states "We stayed only a few hours. We think this place was being used for a weekend drug and prostitution house, way to many people in and out. Lots of noise and yelling."[64]

- 2011 Yelp review out of Maryland states " This place was close to Washington and we stayed there 5 years ago. How the times have changed, The place reeked of pot smoke and there were hookers in and out of the rooms all night. It must have become some sort of welfare home because families were living there. My second and last night I was woken up by the pimp next door screaming at his girl for not making enough money, he needed to pay for the room and feed her F*^&ing kid who cried in the background. No place to eat near hotel except a Dominos type pizza place and a Chinese restaurant that the Maryland board of health has yet to discover.. On a bright note, no one in our group was killed, maybe because of the constant police presence in the parking lot. DO NOT STAY HERE."[65]

- 2011 Tripadvisor review from Kentucky states "We stayed here a few days ago and the young man working the desk was very unprofessional. The whole look of the property was dismal. I am sure

[61] https://www.tripadvisor.com/Hotel_Review-g58732-d217798-Reviews-Red_Roof_Inn_Seattle_Airport_SEATAC-SeaTac_Washington.html
[62] https://www.tripadvisor.com/Hotel_Review-g58202-d243757-Reviews-Motel_6_Washington_DC_SW_Springfield-Springfield_Fairfax_County_Virginia.html
[63] https://www.tripadvisor.com/Hotel_Review-g54258-d227066-Reviews-Red_Roof_Inn_Greenville-Greenville_South_Carolina.html
[64] https://www.expedia.com/Stockton-Hotels-Red-Roof-Inn-Stockton.h790032.Hotel-Reviews
[65] https://www.yelp.com/biz/red-roof-inn-washington-dc-laurel-laurel

it's safe to say that drug dealers and hookers make this their home base. We will never stay at this place again!"[66]

- 2012 TripAdvisor review out of Wisconsin states "I have stayed at this hotel twice a year for nearly 10 years and have never been as disappointed in the hotel as I was this time. It wasn't the room....the room was great....redone....comfy bed....clean. However, the PROBLEM was the other guests. There was a party going on above us with people yelling & cussing all night long. We complained to the front desk and nothing was done. Several suspect prostitutes were coming and going at all hours. The parking lot was LITTERED with strange things such as wigs, beer cans, and condoms."[67]

- 2012 Tripadvisor review from Texas states "I stayed here for a week and it was a miserable experience. The room was ok but the thugs that frequent were always present on the property made for an uneasy time. There were drug deals, prostitutes, and gang type activity on the property. There were a few thugs that tried to intimidate me and I never felt safe the whole time I was staying there. Trust me... Look elsewhere."[68]

- 2012 Tripadvisor review from Michigan states "ABSOLUTELY NEVER STAY HERE - drug dealing and prostitution rife at hotel."[69]

- 2013 Tripadvisor review from California states "...Because of our road trip we didn't arrive until 10 pm that night when we arrived there were about 5 prostitutes outside with pimps. We were so frightened we drove around for 30 minutes trying to cancel our stay and because it was after 6 pm they wouldn't allow us to cancel. I'm positive the owner has some sort of deal with the drug dealers and pimps there is no way he doesn't know this is going on. They don't even try to hide it!..."[70]

- 2013 Tripadvisor review from Mississippi states "...If you are looking to have a beer with any of the vaqueros standing on each corner of the motel at all hours of day or night, this is the place for you. If you wish easy access to a prostitute down the hall, this is the place for

[66] https://www.tripadvisor.com/Hotel_Review-g39604-d224889-Reviews-Red_Roof_Inn_Louisville_Expo_Airport-Louisville_Kentucky.html
[67] https://www.tripadvisor.com/Hotel_Review-g60149-d123051-Reviews-Red_Roof_Inn_Milwaukee_Airport-Oak_Creek_Wisconsin.html
[68] https://www.tripadvisor.com/Hotel_Review-g56003-d223173-Reviews-Red_Roof_Inn_Houston_Westchase-Houston_Texas.html
[69] https://www.tripadvisor.com/Hotel_Review-g42207-d235115-Reviews-Red_Roof_Inn_Flint_Bishop_Airport-Flint_Michigan.html
[70] https://www.tripadvisor.co/Hotel_Review-g33130-d231069-Reviews-Red_Roof_Inn_Stockton-Stockton_California.html

you. If you desire a tattoo from the guy next door who just got out of prison, this is the place for you…"[71]

- 2013 Tripadvisor review from North Carolina states "Stayed here this past weekend and had to change rooms 3 times. The inappropiate activites at this hotel were horendous. Prostitutes, dogs everywhere, drug deals and a fight in the parking lot. Would never stay again."[72]

- 2013 Yelp review from Virginia states "Honestly i would have given a 1 star but i have to give an extra star for the honesty of the woman there who adamantly admitted that there are lots of prostitutes that stay there.hey at least she was honest about it."[73]

- 2013 Tripadvisor review from Florida states "….The corporate office, regional, and general managers WILL be receiving very detailed letters INCLUDING information pertaining to the police department being called because of drug activity AND CONCUBINES/PROSTITUTES as well as the PEDDLERS asking hotel guests for money. THE WORST HOTEL IVE EVER STAYED AT."[74]

- 2014 Tripadvisor review from Oklahoma states "…. Random meth heads, hookers, and undesirables roaming the property ALL night. Literally all night."[75]

- 2014 Expedia review from Ohio states "…also prostitution going on every dang night along with drug deals in parking lot…"[76]

- 2014 Expedia review from North Carolina states "Great place if you need a hooker or drugs. Never again. Pimps running there girls in and out all night. Two domestic disputes during the night. Got no sleep."[77]

- 2014 Expedia review from California states "It was like out of a movie with all the hookers, and pimps out front. . . ."[78]

---

[71] https://www.tripadvisor.com/Hotel_Review-g43833-d225211-Reviews-Red_Roof_Inn_Jackson_Downtown_Fairgrounds-Jackson_Mississippi.html
[72] https://www.tripadvisor.com/Hotel_Review-g49673-d94900-Reviews-Red_Roof_Inn_Wilmington_NC-Wilmington_North_Carolina.html
[73] https://www.yelp.com/biz/red-roof-plus-washington-dc-alexandria-alexandria-2
[74] https://www.tripadvisor.com/Hotel_Review-g34550-d226822-Reviews-or40-Red_Roof_Inn_Pensacola_I_10_at_Davis_Highway-Pensacola_Florida.html
[75] https://www.tripadvisor.com/Hotel_Review-g51560-d224966-i80249747-Red_Roof_Inn_Oklahoma_City_Airport-Oklahoma_City_Oklahoma.html
[76] https://www.expedia.com/Columbus-Hotels-Red-Roof-Inn-Columbus-Ohio-State-Fairgrounds.h450037.Hotel-Reviews
[77] https://www.expedia.com/Wilmington-Hotels-Red-Roof-Inn-Wilmington.h14416.Hotel-Reviews
[78] https://www.expedia.com/Stockton-Hotels-Red-Roof-Inn-Stockton.h790032.Hotel-Reviews

- 2014 Expedia review from North Carolina states "No security at this Hotel, and there was a lot of traffic coming in and out of the parking lot all hours of the evening. A lot of undesirables hanging around, pimps and drug dealers. There are some whom set up a porch by their doors indicating that they are living there for extended stays."[79]

- 2015 Tripadvisor review from Missouri "The scariest of all was definitely when I came across a scene of what appeared a prostitute kneeling and crying in the parking lot while a pimp was yelling at her. Management should look into that."[80]

- 2016 Expedia review from Ohio states "Absolutely terrible. Drugs everywhere, prostitutes. Just not a good hotel."[81]

- 2016 Tripadvisor review from Virginia states "...Prostitutes work out of this hotel. I would never stay here again."[82]

- 2016 review from Ohio states "Hookers everywhere...not a safe place to bring the wife & kids that's for sure."[83]

- 2015 Yelp review from Ohio states "They give pimps discounts and the strippers from Christie's cabaret stay here almost exclusively. So there is a lot of drug activity and whores."[84]

- 2016 review from Tripadvisor from Texas states "I have to imagine it would be a very reasonably priced casual encounter as well... Let's just say that the pimps were easy to ID and the women standing in the doorways with almost nothing on reminded me of a visit to Amsterdam in my youth. The room was nice enough, but this is quite possibly the most sketchy neighborhood I've ever had a hotel in outside of Europe's Redlight districts."[85]

- 2017 Expedia review from Ohio states "...we checked in early at like 3 pm, but when the sun went down omg !! all the prostitutes started

---

[79] https://www.tripadvisor.com/Hotel_Review-g49673-d94900-Reviews-Red_Roof_Inn_Wilmington_NC-Wilmington_North_Carolina.html
[80] https://www.tripadvisor.com/Hotel_Review-g44881-d224932-Reviews-or10-Red_Roof_Inn_Plus_St_Louis_Forest_Park_Hampton_Avenue-Saint_Louis_Missouri.html
[81] https://www.expedia.com/Dayton-Hotels-Red-Roof-Inn-Dayton-North-Airport.h10480.Hotel-Reviews
[82] https://www.tripadvisor.com/Hotel_Review-g58277-d225059-Reviews-Red_Roof_Inn_Virginia_Beach-Virginia_Beach_Virginia.html#REVIEWS
[83] https://www.expedia.com/Dayton-Hotels-Red-Roof-Inn-Dayton-North-Airport.h10480.Hotel-Reviews
[84] https://www.yelp.com/biz/red-roof-inn-canton-north-canton-2
[85] https://www.tripadvisor.com.au/Hotel_Review-g56003-d1577352-Reviews-or40-Red_Roof_Inn_Houston_North_FM1960_I_45-Houston_Texas.html

showing up! I was so embarrassed having to explain to my 6 year old daughter why these women were dressed that way!!!"[86]

- 2017 Google review from Ohio states "There are prostitutes in this hotel. A pimp was outside bleeding. Police were called. He was shot."[87]

- 2017 Tripadvisor review from Texas states "Two words - NEVER AGAIN! During check in we were skipped for a 2 hour prostitution sale, her pimp propositioned my husband and son in the parking lot for drugs and sale of prostitution. We did not feel safe nor comfortable the entire 2 days we were there."

- 2018 Expedia review from Ohio states "...There were also at least 2 hookers walking around soliciting. We also watched/heard 2 men argue outside, to the point I was afraid someone was going to end up hurt..."[88]

- 2019 Yelp review from Ohio states "...The hotel/motel really, it became obvious this was a live in hotel for some which happens, but it became apparent there was prostitution happening here and it was very very unnerving I was more concerned of the persons moving about the hotel at no discretion of the place. The hotel had more shady people milling about no security. There were unsavory things going's on "hired persons" if you will..."[89]

- 2019 Expedia review from Ohio states "Cons: Omg! Prostitution happening here. Prostitutes hanging out of their doors even solicited a family member. Shady people. Banging on doors middle of the night. This is what you get for the price..."[90]

---

[86] https://www.expedia.com/Columbus-Hotels-Red-Roof-Inn-Columbus-East-Reynoldsburg.h20658.Hotel-Reviews
[87] https://www.google.com/travel/hotels/Red%20Roof%20Inn%205900%20Pfeiffer%20Rd,%20Blue%20Ash,%20OH%2045242%20google/entity/CgsIpv7r-
N3htczhARAB/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4
515404,4597339,4723331,4731329,4757164,4778035,4810792,4810794,4814050,4821091,4861688,4864715,4874
190,4886082,4886480,4893075,4902277,4905351,4906019,4926165,4926489,4930751,4930752,4931360,4936396,
4937897,4938634,4938636,47061553&hl=en-
US&gl=us&ssta=1&q=Red+Roof+Inn+5900+Pfeiffer+Rd,+Blue+Ash,+OH+45242+google&grf=EmQKLAgOEigS
JnIkKiIKBwjnDxACGA4SBwjnDxACGA8gADAeQMoCSgcI5w8QARgfCjQIDBIwEi6yASsSKQonCiUweDg4N
DA1M2VjNDY2NjhiZWQ6MHhlMTk4ZDCwZGRmMWFmZjl2&rp=EKb-6_jd4bXM4QEQpv7r-
N3htczhATgCQABIAcABAg&ictx=1&sa=X&ved=2ahUKEwiqqPCyxvH8AhUgQzABHT-DCyEQ4gl6BAhrEAU
[88] https://www.expedia.com.tw/en/Cincinnati-Hotels-Red-Roof-Inn-Cincinnati-East-Beechmont.h25044.Hotel-
Reviews
[89] https://www.yelp.com/biz/red-roof-inn-cleveland-airport-middleburg-heights-middleburg-heights
[90] https://www.expedia.com/Dayton-Hotels-Red-Roof-Inn-Dayton-North-Airport.h10480.Hotel-Reviews

64.     This sampling of news stories, reviews, and other public information establishes that, at the time Jane Doe (L.M.H.) was trafficked at the subject properties, the RRI Defendants knew or should have known that:

    a.  There was widespread and ongoing sex trafficking occurring at RRI branded properties.

    b.  Sex trafficking was a brand-wide problem for RRI originating from management level decisions at their corporate offices in Ohio.

    c.  RRI franchisees and hotel staff were not taking reasonable steps to identify and respond to known or probable sex trafficking occurring at their hotel properties and were facilitating sex trafficking at the branded hotel properties.

    d.  RRI's efforts, if any, to stop facilitating sex trafficking in their owner operated and branded properties were not effective.

    e.  RRI and its franchisees were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring.

65.     Despite the mounting evidence that sex trafficking at its properties was ongoing and growing, RRI continued to earn revenue by continuing conduct that they knew or should have known would facilitate that trafficking.

**b.    Defendants had actual and constructive knowledge of widespread and ongoing sex trafficking at the St. Louis RRI.**

66.     Defendants were specifically aware that sex trafficking was widespread and ongoing at the St. Louis RRI.

67.     Internet reviews for the St. Louis RRI, which upon information and belief Defendants managed and monitored, show the pervasiveness of sex trafficking, and associated illegal activities before and well after Jane Doe (L.M.H.) was trafficked. For example:

    •   2013 Yelp review states "...I saw and heard a lot of illegal activity going on including car break-ins, drug deals, and prostitution. At the top of this operation you have the manager, Chevon Barnes, who was

28

the nastiest, rudest, unprofessional being I have ever come across. I told her about the illegal activity and she said she knows what's going on at her hotel and if anything was she would take care of it. Needless to say the prostitute staying next to me was still there when I left…"[91]

- 2015 TripAdvisor review states "…The scariest of all was definitely when I came across a scene of what appeared a prostitute kneeling and crying in the parking lot while a pimp was yelling at her…"[92] This review elicited a response from the general manager, Callie W.

- 2017 Google review states "Never ever go to this place all the employee sell drugs and bunch of prostitute around your room…"[93]

- 2017 Trip Advisor review states "…We booked this hotel for 2 nights but checked out after one because while my husband was at work I seen more drug deals happen 2 doors down from me, then i have ever seen…When a car pulls up and 3 men get out and stand there while another one run to make the deal, you know it is not safe…"[94] This review elicited a response from the general manager.

- 2018 Expedia review states "It was ok, but I would never have my family stay with me in this dangerous neighborhood. Drug dealers and shady characters outside the window passing by."[95]

- 2019 Expedia review states "…Hookers outside at night…"[96]

---

[91] https://www.yelp.com/biz/red-roof-plus-st-louis-forest-park-hampton-ave-st-louis

[92] https://www.tripadvisor.com/Hotel_Review-g44881-d224932-Reviews-or10-Red_Roof_Inn_Plus_St_Louis_Forest_Park_Hampton_Avenue-Saint_Louis_Missouri.html

[93] https://www.google.com/travel/hotels/Red%20Roof%20Inn%205823%20Wilson%20Ave,%20Saint%20Louis,%20MO%2063110%20google/entity/CgoIo9_L9YLFr4ZXEAE/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4886082,4886480,4893075,4902277,4905351,4905600,4926165,4926489,4930751,4930752,4931360,4935108,4936396,4937897,4938634,4938635,4942347,47061553&hl=en-US&gl=us&ssta=1&q=Red+Roof+Inn+5823+Wilson+Ave,+Saint+Louis,+MO+63110+google&grf=EmQKLAgOEigSJnIkKiIKBwjnDxACGAESBwjnDxACGAIgADAeQMoCSgcI5w8QARgfCjQIDBIwEi6yASsSKQonCiUweDg3ZDhiNTczZGM1OTEwZTM6MHg1NzBjYmVvmODJlYjJlZmEz&rp=EKPfy_WC36-GVxCj38v1gt-vhlc4AkAASAHAAQI&ictx=1&sa=X&ved=2ahUKEwi0o7--xvH8AhXKIzQIHY-sDiIQ4gl6BAhnEAU

[94] https://www.tripadvisor.com/Hotel_Review-g44881-d224932-Reviews-or10-Red_Roof_Inn_Plus_St_Louis_Forest_Park_Hampton_Avenue-Saint_Louis_Missouri.html

[95] https://www.expedia.com/St-Louis-Hotels-Red-Roof-Inn-PLUS-St-Louis-Forest-Park-Hampton-Ave.h24411.Hotel-Reviews

[96] Id.

- 2019 Google review states "...drug deals taking place in parking lot.."[97]

- 2020 Booking.com review states "...it looks like they were letting people prostitute there"[98]

- 2020 Booking.com review states "There was a person dealing drugs in the room next door who was in and out all night and knocking on door to get back in. Then there was a fight that someone threw someone into my door. I call 911..."[99]

- 2020 Booking.com review states "...Rooms dirty, rooms with lots of local traffic, people in & out so quick makes one believe drug traffic"[100]

- 2020 Booking.com review states "...over all vibe of hotel and neighborhood, looks like a place drug dealers hang out at, doesn't help that the fella that was trying to check in behind me smelt like pot and pulled out a wad of money..."[101]

- 2020 Booking.com review states "High traffic people coming and going all night long. There seems to be a prostitution ring everyone is oblivious to... There was a used condom in the nightstand drawer"[102]

- 2020 Expedia review states "No tissue at all, room was very dirty, next door was loud & obnoxious. A lot of young prostitutes."[103]

---

[97]https://www.google.com/travel/hotels/Red%20Roof%20Inn%205823%20Wilson%20Ave,%20Saint%20Louis,%20MO%2063110%20google/entity/CgoIo9_L9YLfr4ZXEAE/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4886082,4886480,4893075,4902277,4905351,4905600,4926165,4926489,4930751,4930752,4931360,4935108,4936396,4937897,4938634,4938635,4942347,47061553&hl=en-US&gl=us&ssta=1&q=Red+Roof+Inn+5823+Wilson+Ave,+Saint+Louis,+MO+63110+google&grf=EmQKLAgOEigSJnlkKiIKBwjnDxACGAESBwjnDxACGAIgADAeQMoCSgcI5w8QARgfCjQIDBIwEi6yASsSKQonCiUweDg3ZDhiNTczZGM1OTEwZTM6MHg1NzBjYmVmMODJlYjJlZmEz&rp=EKPfy_WC36-GVxCj38v1gt-vhlc4AkAASAHAAQI&ictx=1&sa=X&ved=2ahUKEwi0o7--xvH8AhXKIzQIHY-sDiIQ4gl6BAhnEAU
[98] https://www.booking.com/hotel/us/red-roof-inn-st-louis-forest-park.html
[99] Id.
[100] Id.
[101] Id.
[102] Id.
[103] https://www.expedia.com/St-Louis-Hotels-Red-Roof-Inn-PLUS-St-Louis-Forest-Park-Hampton-Ave.h24411.Hotel-Reviews

- 2020 TripAdvisor review states "...Usual cheap hotel in a crime ridden city so nothing out the normal with the street people staying at the hotel doing drugs that were our temporary neighbors."[104]

- 2021 Booking.com review states "...Saw obvious prostitution..."[105]

- 2021 Booking.com review states "...The hotel is in a horrible and unsafe area. It was full of drug addicts and prostitution..."[106]

- 2021 Booking.com review states "...Also when I was checking in the local Police showed up to kick a woman out of her room who was apparently living there. I asked the police if this was a decent place to stay and they highly suggested I cancel and leave because they frequented this hotel for drugs, violence, theft, etc... The odor of marijuana smoke could be smelled at all hours of my stay at this hotel... I watched several drug deals go down in the parking lot..."[107]

- 2022 Expedia review states "...Hold up, didn't mention the drug sales, and what seemed to be Prostitution going on next to us or in the parking lot..."[108] This review elicited a response from the general manager.

68.     Traffickers, including Jane Doe (L.M.H.)'s trafficker, repeatedly chose to use the St. Louis RRI for their sex trafficking activity. They selected this hotel because of policies and practices that created a favorable environment for trafficking and because hotel staff turned a blind eye to signs of trafficking. These traffickers followed a repetitive and routine procedure during stays at the St. Louis RRI. There were obvious signs of this activity, which were consistent with the well-known "red flags" for sex trafficking in the hospitality industry. As such, Defendants also knew or should have known about the pervasive sex trafficking at the St. Louis RRI based on obvious indicators of this activity.

---

[104] https://www.tripadvisor.com/Hotel_Review-g44881-d224932-Reviews-or10-Red_Roof_Inn_Plus_St_Louis_Forest_Park_Hampton_Avenue-Saint_Louis_Missouri.html
[105] https://www.booking.com/hotel/us/red-roof-inn-st-louis-forest-park.html
[106] Id.
[107] Id.
[108] https://www.expedia.com/St-Louis-Hotels-Red-Roof-Inn-PLUS-St-Louis-Forest-Park-Hampton-Ave.h24411.Hotel-Reviews

69. Traffickers, including L.M.H.'s trafficker, operated with little regard for concealment, due to an implicit understanding between Defendants and traffickers. This understanding enabled the traffickers to operate openly, as they had found a venue where they could conduct their operations without disruption from Defendants.

70. Upon information and belief and based on hotel reviews and records of law-enforcement calls, there were multiple trafficking victims exploited at the St. Louis RRI prior to Jane Doe (L.M.H.)'s trafficking who exhibited "red flags" of trafficking that were observed by hotel staff and management, including paying with cash or prepaid cards, having high volumes of men who were not registered guests in and out of their room at unusual times, arriving with few possessions for extended stays, and other signs consistent with the "red flags" of trafficking identified above. Trafficking has a significant effect on its victims, and, upon information and belief, there were obvious "red flags" of trafficking apparent from the appearance, demeanor, and restricted movements of these victims, as well as the nature of these victims' interactions with their traffickers and others, all of which provided notice that these victims were being subjected to violence, coercion, control, and exploitation.

71. All knowledge from the staff at the St. Louis RRI is imputed to the RRI Defendants, which employed the hotel staff. Thus, the RRI Defendants knew about the widespread and ongoing trafficking at the St. Louis RRI, including the trafficking of Jane Doe (L.M.H.), through the direct observations of hotel staff, including management-level staff.

72. Upon information and belief, the RRI Defendants knew or should have known about the widespread trafficking at the St. Louis RRI based on:

a. The RRI Defendants' direct supervision and management of RRI corporate properties, including the St. Louis RRI.

b. The RRI Defendants' collection and review of surveillance footage from RRI branded properties.

c. The RRI Defendants' review of security logs that all hotels were required to keep on a form dictated by the RRI Brand Defendants.

d. The RRI Brand Defendants' capture, retention, and analysis of extensive data about virtually all aspects of the operation of the RRI branded properties, including extensive guest data and detailed reports about hotel operations through reservation and property management systems.

e. The RRI Brand Defendants' capture, review, and analysis of customer feedback from surveys and customer hotlines, which was then circulated and distributed among upper-level management through Negative Review reports.

f. The RRI Brand Defendants' protocol that, on its face, required hotel staff and franchisees to report suspected criminal activity the RRI Brand Defendants.

g. The RRI Defendants' communication with law enforcement about criminal activity at RRI properties.

h. The RRI Brand Defendants' regular inspection of the RRI branded properties.

i. Other sources of non-public information available to the RRI Brand Defendants.

73. Defendants had constructive knowledge of the widespread and ongoing trafficking at the St. Louis RRI because this trafficking resulted from their failure to exercise ordinary care operating the hotels.

74. Based on their knowledge of the problem of sex trafficking in the hotel industry, at RRI-branded hotels, and at the St. Louis RRI, Defendants each had a duty to exercise reasonable prudence to detect ongoing sex trafficking at the St. Louis RRI and to make a reasonable investigation in response to signs of potential sex trafficking. If Defendants had used reasonable prudence, they would have been aware of the widespread

and ongoing trafficking at the St. Louis RRI and that they were financially benefiting from such trafficking.

    **c.    Defendants knew Jane Doe (L.M.H.) was being trafficked at the St. Louis RRI because of the apparent and obvious "red flags" of sex trafficking.**

75.    During the period that Jane Doe (L.M.H.) was trafficked at the St. Louis RRI, there were obvious signs that her trafficker was engaged in sex trafficking:

    a.    At check in, hotel staff observed Jane Doe (L.M.H.) and saw that she was emotional, nervous, scared, and showed signs of physical abuse.

    b.    Hotel staff would have observed Jane Doe (L.M.H.) check in with few or no personal items and appear to be malnourished and/or have poor hygiene.

    c.    The hotel rooms in which she was trafficked were frequently paid for with cash or prepaid cards.

    d.    Jane Doe (L.M.H.)'s trafficker would often book more than one room at a time to accommodate the multiple victims he was trafficking.

    e.    Hotel staff would have observed Jane Doe (L.M.H.), a minor, high on drugs and alcohol while on the hotel property.

    f.    Hotel staff would have observed Jane Doe (L.M.H.), a minor, checking in with and staying on the property with her trafficker who was visibly significantly older than her.

    g.    Other females, including a minor, were present with Jane Doe (L.M.H.) and her trafficker at the St. Louis RRI.

    h.    Jane Doe (L.M.H.), a minor, stayed at the St. Louis RRI on multiple occasions, often during school hours.

    i.    The "Do Not Disturb" door hanger was used very frequently.

    j.    L.M.H. requested extra towels and linens from housekeeping but would often deny staff entry into the room. Hotel staff observed that she was dressed provocatively and was emotional, nervous, and scared.

    k.    Jane Doe (L.M.H.)'s trafficker would post ads for her services on the internet using the hotel's Wi-Fi. Specifically, in February 2015, one

of these ads stated that L.M.H.'s services were being offered at the St. Louis RRI.

l.     Several johns entered and left Jane Doe (L.M.H.)'s room at unusual hours and were present at the hotel for brief periods of time.

m.     There was heavy foot traffic in and out of Jane Doe (L.M.H.)'s room involving men who were not hotel guests. This traffic was visible to hotel staff.

n.     After Jane Doe (L.M.H.) checked out, hotel cleaning staff would have noticed sex paraphernalia like condom wrappers and lubricant in the room.

o.     Other obvious signs of trafficking consistent with the modus operandi of her trafficker and which included well known "red flags" for trafficking in a hotel.

76.     Based upon information and belief, multiple employees at the St. Louis RRI, including management-level employees, observed, or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment.

77.     As such, Defendants knew or were willfully blind to the fact that Jane Doe (L.M.H.) was being trafficked at the St. Louis RRI.

78.     Given these obvious signs, RRI Brand Defendants knew or should have known about the trafficking of Jane Doe (L.M.H.) based on its policy or protocol that required hotel staff to report suspected criminal activity including sex trafficking.

79.     Defendants also knew or should have known about Jane Doe (L.M.H.)'s trafficking based on the other methods, listed above, that they used to monitor and supervise the subject RRI.

80.     Based on their knowledge of the problem of sex trafficking in the hotel industry, at RRI-branded hotels, and at the St. Louis RRI, Defendants each had a duty to exercise reasonable prudence to detect ongoing sex trafficking at the subject hotels and to make a reasonable investigation in response to signs of potential sex trafficking. If the

Defendants had used reasonable prudence, they would have been aware of Jane Doe (L.M.H.)'s trafficking at the St. Louis RRI and that they were benefiting from such trafficking.

**IV. Defendants actively facilitated sex trafficking at the St. Louis RRI, including the trafficking of Jane Doe (L.M.H.).**

81. Defendants had both actual and constructive knowledge of the trafficking of Jane Doe (L.M.H.) at the St. Louis RRI because the trafficking was the direct result of Defendants facilitating her trafficking at the St. Louis RRI.

82. The RRI Defendants are responsible for the acts, omissions, and knowledge of all employees of the St. Louis RRI when operating the hotel because these acts and omissions were committed in the scope and course of employment, because the RRI Defendants ratified these acts and omissions, and because the RRI Defendants failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the specific risks, known to the RRI Defendants, of sex trafficking occurring at RRI branded locations including the St. Louis RRI.

83. Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the St. Louis RRI, the RRI Defendants continued renting rooms to these traffickers, including the rooms used to sexually exploit victims, including Jane Doe (L.M.H.).

84. The RRI Defendants knew or were willfully blind to the fact that Jane Doe (L.M.H.) was being trafficked and, despite this, benefited from continued association with her trafficker by providing him a venue in the form of hotel rooms and related services, to facilitate Jane Doe (L.M.H.)'s sexual exploitation.

85. The RRI Defendants, including through the hotel staff and management they employed, also facilitated widespread trafficking at the St. Louis RRI, including the trafficking of Jane Doe (L.M.H.), in ways including:

    a. allowing inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to human trafficking;

    b. inadequate and inadequately enforced sex trafficking notice and training for hotel staff;

    c. choosing not to report known or suspected criminal activity including sex trafficking to appropriate law enforcement agencies;

    d. implicitly encouraging the activities of traffickers including but not limited to Jane Doe L.M.H.'s trafficker by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

86. The RRI Brand Defendants also participated directly in aspects of the operation of the St. Louis RRI that influenced whether and to what extent trafficking occurred at the hotel, including the trafficking of Jane Doe (L.M.H.), as follows:

    a. They retained control over and responsibility for training related to detecting and responding to human trafficking;

    b. They retained control over and responsibility for setting, supervising, overseeing, and enforcing all policies and protocols regarding detecting and responding to human trafficking;

    c. Dictating policies for monitoring and surveillance of RRI hotels;

    d. They were responsible for maintaining, monitoring, and analyzing patterns of criminal activity in RRI hotels;

    e. Dictating when and how hotel staff should interact with law enforcement;

    f. They assumed responsibility for distributing safety-related information, including information related to trafficking, to hotel staff;

g.    They assumed responsibility for monitoring circumstances and events associated with a high risk of trafficking and notifying hotel staff of the same;

h.    They retained control over the setting, supervision, overseeing, and enforcement of detailed policies and protocol for housekeeping services at the hotel, including policies for how often rooms must be entered, how to respond to guest refusals of entry into rooms, and steps to monitor guest safety issues through housekeeping services;

i.    They retained control to assess or audit hotel properties, specifically, for the purpose of evaluating whether safety and security measures, including those related to trafficking, are in place; and

j.    They retained control to develop property-specific protocols for hotels that were experiencing a particular type of criminal activity.

87.    RRI Brand Defendants directly participated in and controlled the renting of rooms at the St. Louis RRI by, among other things:

a.    They controlled all details of the guest reservation, check-in, and payment processes through management of and control over all systems used for those processes and through adoption and enforcement of detailed and specific policies dictating the means and methods used for the day-to-day implementation of these processes.

b.    They directly took reservations for rooms at the St. Louis RRI and accepted payment for those rooms through a central reservation system that they controlled and operated.

c.    They could make reservations and take payment for rooms without any involvement or approval by the RRI St. Louis Entities.

d.    When a guest did not make a reservation in advance through the central reservation system, they still controlled the specific process used to register a walk-in guest and generate a reservation for that guest by requiring use of a RRI system to process the room rental and payment.

e.    They set or otherwise controlled room prices, required discounts, and reward programs.

f.    They controlled all guest data related to room rentals.

g.    They set policies on refusing service.

h. They controlled and restricted the ability of hotel staff to refuse or cancel a reservation.

i. They required hotel staff and management to notify them when evicting a guest from a room.

j. They established detailed policies and protocols that dictated, step-by-step, everything that would happen from the time a guest arrived at the hotel until they entered their guest room. This included operational directives regarding payment methods, identification requirements, the number of guests that could be in each room and whether information needed to be collected for each guest, what questions hotel staff should and should not ask, and other matters related to check-in.

k. Use of a property management system was required, which was owned, maintained, and controlled by RRI Brand Defendants, for virtually all aspects of hotel operations related to room rentals. Through the backend of this system, they had direct involvement in room rentals.

l. They oversaw do not rent (DNR) lists for their branded properties.

m. They collected, tracked, and reported comprehensive information about each guest.

88.    Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the St. Louis RRI, RRI Brand Defendants continued renting rooms to traffickers, including the rooms used to sexually exploit victims, including Jane Doe (L.M.H.).

89.    RRI Brand Defendants knew or should have known that Jane Doe (L.M.H.) was being trafficked and, despite this, benefited from continued association with her trafficker by providing him hotel rooms and related services to facilitate Jane Doe (L.M.H.)'s sexual exploitation.

90.    Upon information and belief, despite having actual or constructive knowledge of the ongoing sex trafficking at the St. Louis RRI, the RRI Brand Defendants continued participating in a venture at that hotel, with the RRI St. Louis Entities and the

hotel staff, in a way that it knew or should have known would lead to additional sex trafficking at the hotel, including the following:

    a.    They adopted inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line hotel staff regarding issues related to human trafficking.

    b.    They implicitly condoned and endorsed repeated decisions by hotel staff not to report or respond to trafficking appropriately.

    c.    They encouraged hotel staff to focus on revenue rather than preventing use of rooms for criminal activity, including trafficking.

    d.    They continued to use policies, protocols, and practices that had been shown to lead to widespread trafficking.

    e.    They adopted policies and practices that allowed traffickers to reserve rooms using fake names and without providing valid identification matching the name on the room reservation.

    f.    They adopted policies and practices allowed traffickers to reserve rooms using prepaid cards and cash, which provided relative anonymity and non-traceability.

    g.    They adopted policies and practices that allowed access to high volumes of unregistered guests all going into the same room without logging these guests or requiring identification.

    h.    They attracted traffickers by affirmatively creating a favorable venue where access was easy, risks of interference were low, and traceability was minimal.

    i.    They reduced security costs by foregoing proper security measures.

91.    If RRI Brand Defendants had exercised reasonable diligence when operating the St. Louis RRI, RRI Brand Defendants would have prevented the St. Louis RRI from being used to facilitate widespread and ongoing sex trafficking, including the trafficking of Jane Doe (L.M.H.). Instead, RRI Brand Defendants engaged in the course of conduct that affirmatively facilitated widespread and ongoing sex trafficking, including the trafficking of Jane Doe (L.M.H.).

## V.  Defendants' ventures at the St. Louis RRI.

92.  Through the actions described above, each Defendant participated in a venture that the Defendant knew or should have known had engaged in violations of the TVPRA.

93.  Each Defendant generated substantial income from the St. Louis RRI, receiving a share of the profits from room rentals collected at the hotel. The fees generated by the Defendants were primarily based on gross room rentals; therefore, the Defendants' profits increased with each room rental at the St. Louis RRI, including each room rented to a trafficker. Revenue generated from rooms rented at the St. Louis RRI was distributed among the Defendants, with each benefiting from each rental of a hotel room to a trafficker, including L.M.H.'s trafficker.

94.  Defendants profited from every room rented to a trafficker or for use in trafficking at the St. Louis RRI, both from the room fee and from fees for other hotel services.

95.  In ways described more fully above, Defendants knowingly received a financial benefit from participating in a venture, in the form of a continuous business relationship and implicit understanding, the population of sex traffickers operating out of the St. Louis RRI, including L.M.H.'s trafficker (hereinafter "Venture 1").

96.  Defendants formed this continuous business relationship and implicit understanding with the traffickers at the St. Louis RRI by continuing to rent rooms to be used for trafficking (including L.M.H.'s trafficking) after the Defendants knew or should have known that the rooms were being used for unlawful trafficking.

41

97. This business relationship involved mutual pursuit of financial benefit: the traffickers were renting the hotel rooms to generate revenue from sex trafficking and the Defendants were generating revenue by renting the hotel rooms.

98. This implicit understanding developed because sex traffickers, including L.M.H.'s, frequently used the St. Louis RRI for their trafficking knowing that staff members would look the other way. This occurred because of the acts and omissions of the Defendants that created a favorable environment for sex trafficking to flourish.

99. Defendants participated in this venture by acting jointly to rent rooms to traffickers and to operate the hotel in a way that attracted business from traffickers and facilitated their trafficking activity. As further described above, RRI St. Louis Entities provided "boots on the ground" at the hotel, and the RRI Brand Defendants played a primary role in renting rooms at the St. Louis RRI and retained control over and was directly involved in aspects of hotel operations related to sex trafficking.

100. Defendants participated in the venture by continuing to rent rooms to traffickers, including L.M.H.'s, after they knew or should have known that victims like Jane Doe L.M.H. were being subjected to unlawful trafficking. They also continued operating the hotel in a way that they knew or should have known would encourage traffickers to select the St. Louis RRI as a venue for their illegal activities.

101. Defendants did not only provide these traffickers with a physical space (harboring) where they could imprison victims and sell them to "johns" (providing), but they also provided these traffickers with the cover of a legitimate business as a venue where they could profit from sexual exploitation with a low risk of disruption. This was done pursuant to an implicit agreement with Defendants, which is evidenced by, among other things:

42

a.    The population of traffickers, including L.M.H.'s, that were familiar to the staff at the St. Louis RRI;

b.    These traffickers reduced their operating burden because they did not need to make significant efforts to conceal their activities from the staff at the St. Louis RRI but, instead, freely made requests that would facilitate their trafficking activities without concern for detection or interference by the staff;

c.    Defendants allowed traffickers to take steps that would minimize their traceability to law enforcement, such as accepting cash payments and not requiring identification from appropriate parties; and

d.    Defendants provided additional services to traffickers (including L.M.H.'s trafficker), including but not limited to, internet access, excessive towels, and extra housekeeping services to clean the activities of the trafficking venture once the traffickers vacated the rooms.

102.    The criminal traffickers operating at the St. Louis RRI as part of Venture 1 violated 18 U.S.C. §1591 as to victims including L.M.H.

103.    If Defendants had not continued participating in a venture that they knew or should have known engaged in violations of the TVPRA, they would not have received a benefit from L.M.H.'s trafficking at the St. Louis RRI.

104.    In ways described more fully above, Defendants also knowingly received a financial benefit from participating in a commercial hotel-operating venture at the St. Louis RRI (hereinafter "Venture 2").

105.    Defendants had a longstanding business relationship pursuant to which they jointly participated in operation of the St. Louis RRI with a shared goal of maximizing revenue, including gross room revenue.

106.    Defendants, through their respective roles in hotel operations as described above, facilitated widespread sex trafficking at the St. Louis RRI by continuing to operate the hotel in a way that they knew or should have known resulted in them benefiting from significant sex trafficking occurring on site at this hotel.

43

107.    Venture 2 was engaged in a violation of the TVRPA through the widespread sex trafficking at the St. Louis RRI, which resulted in L.M.H. and other victims being harbored, maintained, and provided in the rooms of the St. Louis RRI. Venture 2 also engaged in a violation of the TVPRA through violations of the TVPRA as a perpetrator by harboring sex trafficking victims as defined by 18 U.S.C §1591(a)(1) and by participating in a criminal trafficking venture as defined by 18 U.S.C §1591(a) (2).

108.    Despite their actual or constructive knowledge that Venture 2 was engaged in violations of 18 U.S.C. §§ 1591(a) and 1595(a), the Defendants participated in the venture by continuing to operate the St. Louis RRI in a way that they knew or should have known would lead to further violations of 18 U.S.C. §1591, including the trafficking of L.M.H. The RRI Brand Defendants continued providing RRI St. Louis Entities with operational support, use of trademarks, marketing services, and other resources to operate the St. Louis RRI in a way that they knew or should have known was engaging in violations of 18 U.S.C §1591(a).

## VI.    RRI Brand Defendants are Jointly Responsible for the Trafficking of Jane Doe (L.M.H.).

109.    Upon information and belief, at all relevant times, the RRI Brand Defendants shared a headquarters, corporate officers, employees, and other resources related to operation and control of the St. Louis RRI.

110.    Upon information and belief, at all relevant times, the RRI Brand Defendants acted jointly to adopt and enforce policies, procedures, and standards for the St. Louis RRI; to participate in and supervise day-to-day operations at the hotel; and to rent rooms at the property.

111.    Upon information and belief, each of the RRI Defendants shared in and benefited from revenue generated from operation and control of the St. Louis RRI and each of the RRI Defendants received a direct benefit when a room was rented to a trafficker at these hotels.

112.    Upon information and belief, each of the RRI Defendants—through its individual acts and omissions and through its joint acts and omissions with other RRI Defendants—knowingly benefited from participating in a venture that it knew or should have known was engaged in a violation of the TVPRA.

113.    Moreover, the RRI Defendants were participants in a joint venture, which involved a common enterprise, profit-sharing, a community of interests, and joint rights of control and management, and are vicariously liable for the violations of the other participants in the joint venture.

114.    Upon information and belief, operation of the St. Louis RRI was part of a single unified operation by RRI Defendants. Upon information and belief, all RRI Defendants shared a common parent company, were subject to joint control, and operated as an integrated enterprise and/or as alter-egos. Upon information and belief, RRI Brand Defendants acted jointly to own, operate, control, manage, and supervise the St. Louis RRI. As an integrated enterprise and/or joint venture, Defendants were separately and jointly responsible for compliance with all applicable laws.

## VII.   Defendants are Jointly and Severally Liable for Jane Doe (L.M.H.)'s Damages.

115.    The venture or ventures in which each Defendant participated were direct, producing, and proximate causes of the injuries and damages to Jane Doe (L.M.H.).

116.    Under the TVPRA, Defendants are jointly and severally liable for all damages that a jury awards to Jane Doe (L.M.H.) for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking.

## CAUSES OF ACTION—SEX TRAFFICKING UNDER THE TVPRA

117.    Jane Doe (L.M.H.) incorporates all other allegations.

**I.    Cause of Action: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a) (all Defendants).**

118.     Jane Doe (L.M.H.) is a victim of sex trafficking within the meaning of § 1591 and 1595(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" of any violation of the TVPRA.

119.    Defendants are perpetrators within the meaning of 18 U.S.C §1595(a) because they:

>    a.    violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, they harbored individuals (including Jane Doe (L.M.H.)) knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts while a minor at their hotel property.

>    b.    violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, they knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at their hotel property.

120.    Violations of 18 U.S.C §1595(a) by each of the Defendants as "perpetrators" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Jane Doe (L.M.H.) to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel properties.

## II.     Cause of Action: Beneficiary Liability under §1595 (a) of the TVPRA (all Defendants).

121.    Jane Doe (L.M.H.) is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

122.    All Defendants are liable as beneficiaries within the meaning of 18 U.S.C. § 1595(a) because, as further described above, each Defendant knowingly benefitted, by receiving additional revenue and other benefits, from its participation in a venture the Defendants knew or should have known was engaged in a violation of the TVPRA.

123.    **Venture 1:** Through acts and omissions more fully described throughout this Complaint, each Defendant received a financial benefit from participating a venture with sex traffickers, including L.M.H.'s trafficker. Each Defendant violated the TVPRA through its participation, as a beneficiary, in Venture 1 as follows:

   a.    Venture 1 resulted when Defendants developed and maintained a continuous business relationship and implicit understanding with sex traffickers at the St. Louis RRI by renting them hotel rooms and providing them related services despite the fact that each Defendant knew or should have known these traffickers were using the St. Louis RRI to engage in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2), including the trafficking of L.M.H.

   b.    This venture violated the TVPRA through the conduct of the traffickers who repeatedly exploited victims, including L.M.H., in the rooms of the St. Louis RRI.

   c.    Each Defendant knew or should have known Venture 1 engaged in violations of the TVPRA.

   d.    Each member of Venture 1 pursued the purpose of generating revenue through this continuous business relationship. Traffickers (including L.M.H.'s trafficker) rented rooms to earn profits by

exploiting trafficking victims (including L.M.H.). Each Defendant received a financial benefit every time a trafficker rented a room.

e.     Each Defendant participated in the venture by continually renting rooms to traffickers, creating a favorable environment for trafficking, and providing a venture where traffickers could continue to continue their sexual exploitation with minimal risk of detection and disturbance, all the while ignoring the obvious signs of trafficking (including L.M.H.'s trafficking).

124.   **Venture 2**: Through acts and omissions more fully described throughout this Complaint, Defendants received a financial benefit from participating in Venture 2 by operating the St. Louis RRI. Each of the Defendants violated the TVPRA through participation, as a beneficiary, in Venture 2 as follows:

a.     Venture 2 is a commercial venture that resulted from the business relationship between Defendants to operate the St. Louis RRI with a common objective of maximizing revenue at the hotel, including gross room revenue.

b.     The venture violated the TVPRA through the widespread sex trafficking that occurred at the St. Louis RRI, including the trafficking of L.M.H. This venture also violated the TVPRA through Defendants' violation of 18 U.S.C §1591(a) as a perpetrator.

c.     Each Defendant, at the relevant time, knew or should have known Venture 2 was engaged in violations of the TVPRA.

d.     Each Defendant knowingly benefited from this venture through the management fees, royalty fees, reservation fees, marketing fees, and other ancillary fees from the operation of the St. Louis RRI, which increased every time a room was rented including rooms rented to traffickers.

e.      Each Defendant, at the relevant time, participated in this venture by (1) continuing the ongoing business relationship despite actual or constructive knowledge the hotel was facilitating sex trafficking; (2) directly involving themselves in and supporting aspects of hotel operations that they knew or should have known were facilitating trafficking at the hotel; and (3) continuing to lend the perceived legitimacy of their brand and provide marketing services for the hotel after they knew or should have known the venture was engaged in violations of the TVPRA.

125.   The ventures in which each Defendant participated were a direct, producing, and proximate cause of the injuries and damages to L.M.H.

### III.   Cause of Action: Liability under 18 U.S.C. § 2255.

126.   While a minor, Plaintiff was a victim under 18 U.S.C. §1591 and is thus entitled to bring a civil action under 18 U.S.C. § 2255.

127.   Defendants are liable to Plaintiff under 18 U.S.C. § 2255 because, as alleged above, Defendants are perpetrators under 18 U.S.C. §1591.

128.   Each of the Defendants are liable to Plaintiff under 18 U.S.C. § 2255 because, as alleged above, each Defendant is liable as a beneficiary under 18 U.S.C. §1595(a).

### IV.   Cause of Action: Vicarious Liability for TVPRA and § 2255 Violations (RRI Defendants).

129.   Under the TVPRA and the federal common law, each member of a joint venture is vicariously liable for the acts and omissions of all other members of that joint venture.

130.   Under the TVPRA and the federal common law, an entity is vicariously liable for the acts and omissions of its alter-egos.

131.   The RRI St. Louis Entities acted as the actual agents of RRI Brand Defendants when operating the St. Louis RRI hotel property.

132.   While acting as an actual agent of the RRI Brand Defendants, RRI St. Louis Entities violated the TVPRA as both a beneficiary and a perpetrator and violated 18 U.S.C. § 2255.

133.   RRI Brand Defendants are vicariously liable for the TVPRA violations and the 18 U.S.C. § 2255 violations of RRI St. Louis Entities.

134.   RRI Brand Defendants are vicariously liable for the TVPRA violations of the RRI St. Louis Entities and the subagents of those Defendants.

49

135.    Additionally, on information and belief, each of the RRI Defendants participated in a joint venture. They had highly integrated operations at the hotels, shared revenue and profits generated from the hotels, and exercised mutual control over the venture at the hotels. They functioned as a single integrated entity and/or as alter-egos of one another.

## DISCOVERY RULE

136.    To the extent Defendants assert an affirmative defense of limitations, Jane Doe (L.M.H.) invokes the discovery rule. At the time she was harmed and through at least 2017, Jane Doe (L.M.H.) was under coercion and control of her trafficker who abused and manipulated her. Thus, Jane Doe (L.M.H.) did not discover and could not reasonably have discovered the legal cause of her injury more than ten years before she filed this lawsuit. While she was under the control of her trafficker, Jane Doe (L.M.H.)—through no fault of her own—lacked the information to bring a claim because she did not know both her injury and the cause of her injury. This lack of information was a direct result of L.M.H. being kept under the control of her traffickers, which Defendants facilitated.

137.    At the time Jane Doe (L.M.H.) was harmed, she did not know that she was the victim of human trafficking as that term is defined by law, that her injury arose from being trafficked at Defendants' hotel or that she was a person trafficked, much less that she was being victimized by a human trafficking venture, and she did not discover and was not in a position to discover the legal cause of her injury, more than ten years before suit was filed.

138.    To the extent Defendants assert an affirmative defense of limitations, Jane Doe (L.M.H.) invokes the doctrine of equitable tolling because, as a result of being a victim of trafficking, Jane Doe (L.M.H.) faced extraordinary circumstances, which arose

through no fault of her own, that prevented her from filing a lawsuit, and those circumstances did not end more than 10 years before Jane Doe (L.M.H.) filed this lawsuit.

139.    As a result of her continuous trafficking through at least 2017, Jane Doe (L.M.H.) was beaten, sexually assaulted, and mentally abused. She lacked the mental capacity to recognize the extent and scope of her injuries or those responsible particularly those who financially benefited from her trafficking but may not have been seen to be directly involved.

140.    Jane Doe (L.M.H.) was under the continuous control of her trafficker through at least 2017. As a result, she did not have the freedom to investigate her claims, to identify those responsible or to seek legal representation necessary to pursue her legal rights.

141.    To the extent Defendants assert an affirmative defense of limitations, Jane Doe (L.M.H.) also invokes the continuing tort doctrine because this lawsuit arises out of a pattern of continuous and ongoing tortious conduct by Defendants, individually and in concert, at the Red Roof Inn subject location.

142.    Jane Doe (L.M.H.) was subject to continuous trafficking at the St. Louis RRI through at least 2017, which is not more than 10 years before Jane Doe (L.M.H.) filed this lawsuit.

143.    This continuous trafficking resulted from Defendants' continuous facilitating of trafficking at the St. Louis RRI and Defendants' ongoing venture with one another and with criminal traffickers.

## **DAMAGES**

144.    Defendants' acts and omissions, individually and collectively, caused Jane Doe (L.M.H.) to sustain legal damages.

145.    Defendants are joint and severally liable for all past and future damages sustained by Jane Doe (L.M.H.).

146.    Jane Doe (L.M.H.) is entitled to be compensated for personal injuries and economic damages, including:

      a.     Actual damages (until trial and in the future)

      b.     Incidental and consequential damages (until trial and in the future);

      c.     Mental anguish and emotional distress damages (until trial and in the future);

      d.     Lost earnings and lost earning capacity (until trial and in the future);

      e.     Necessary medical expenses (until trial and in the future);

      f.     Life care expenses (until trial and in the future);

      g.     Physical pain and suffering (until trial and in the future);

      h.     Physical impairment (until trial and in the future);

      i.     Exemplary/Punitive damages;

      j.     Attorneys' fees;

      k.     Costs of this action; and

      l.     Pre-judgment and all other interest recoverable.

## JURY TRIAL

147.    Jane Doe (L.M.H.) demands a jury trial on all issues.

## RELIEF SOUGHT

148.    WHEREFORE, Jane Doe (L.M.H.) prays that this case be set for trial before a jury and that, upon a final hearing of the cause, judgment be entered for Jane Doe (L.M.H.) against all Defendants jointly and severally for the actual, compensatory, and punitive damages as the evidence may show, and the jury may determine to be proper,

together with the costs of suit, prejudgment interest, post-judgment interest, and such other and further relief to which Jane Doe (L.M.H.) may, in law or in equity, show herself to be justly entitled.

Respectfully submitted,

**MONTGOMERY JONSON LLP**

*/s/ George D. Jonson*
GEORGE D. JONSON (0027124)
LISA M. ZARING (0080659)
MONTGOMERY JONSON LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
gjonson@mojolaw.com / 513.768.5220
lzaring@mojolaw.com / 513.768.5207

**AND**

**PROVOST ★ UMPHREY LAW FIRM, L.L.P.**
BRYAN O. BLEVINS, JR.
Texas Bar No. 02487300 *(pro hac motion to follow)*
MATTHEW C. MATHENY
Texas Bar No. 24039040 *(pro hac motion to follow)*
COLIN D. MOORE
Texas Bar No. 24041513 *(pro hac motion to follow)*
ASHLYNN K. ALEXANDER
Texas Bar No. 24137302 *(pro hac motion to follow)*
350 Pine Street, Ste. 1100
Beaumont, TX 77701
(409) 835-6000 Telephone
bblevins@pulf.com
mmatheny@pulf.com
cmoore@pulf.com
aalexander@pulf.com

**ATTORNEYS FOR PLAINTIFF**

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JANE DOE (L.M.H.), an individual | RED ROOF INNS, INC., et al. |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Franklin**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

George D. Jonson, Montgomery Jonson LLP, 600 Vine Street, Suite 2650, Cincinnati, OH 45202; 513-768-5220

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only) and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane — [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product — Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | Liability — [ ] 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel & — Pharmaceutical Slander — Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' — Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability — [ ] 368 Asbestos Personal [ ] 340 Marine — Injury Product | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product — Liability Liability — **PERSONAL PROPERTY** | | [ ] 840 Trademark [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle — [ ] 370 Other Fraud | | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle — [ ] 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | Product Liability — [ ] 380 Other Personal | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | [ ] 360 Other Personal — Property Damage Injury — [ ] 385 Property Damage | [ ] 720 Labor/Management Relations | [ ] 862 Black Lung (923) [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| | [ ] 362 Personal Injury - — Product Liability Medical Malpractice | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [x] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | [ ] 751 Family and Medical Leave Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights — **Habeas Corpus:** | [ ] 790 Other Labor Litigation | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting — [ ] 463 Alien Detainee | [ ] 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment — [ ] 510 Motions to Vacate | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ — Sentence Accommodations — [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - — [ ] 535 Death Penalty Employment — **Other:** | | | Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - — [ ] 540 Mandamus & Other Other — [ ] 550 Civil Rights | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education — [ ] 555 Prison Condition | [ ] 462 Naturalization Application | | |
| | [ ] 560 Civil Detainee - — Conditions of | [ ] 465 Other Immigration Actions | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
_____
Brief description of cause:
sex trafficking

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ 2,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE Algenon L. Marbley
DOCKET NUMBER see attached list

DATE April 17, 2024

SIGNATURE OF ATTORNEY OF RECORD
/s/ George D. Jonson

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)  Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)  County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)  Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.  Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.  Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.  Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.  Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.  Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.  Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.  Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## RELATED CASES

## ALL WITH JUDGE ALGENON L. MARBLEY:

|  | Case Number | Case Caption | Date Filed |
|---|---|---|---|
| 1 | **2:19-cv-755** | ***H.H. v. G6 Hospitality LLC et al*** | **March 3, 2019** |
| 2 | 2:19-cv-849 | *M.A. v. Wyndham Hotels & Resorts, Inc., et al.* | March 8, 2019 |
| 3 | **2:19-cv-1194** | ***Doe S. W. v. Lorain-Elyria Motel, Inc., et al.*** | **March 29, 2019** |
| 4 | **2:19-cv-4965** | ***A.C. v. Red Roof Inns, Inc., et al.*** | **November 8, 2019** |
| 5 | 2:21-cv-4933 | *T.P. v. Wyndham Hotels & Resorts, Inc., et al.* | October 2, 2021 |
| 6 | 2:21-cv-4934 | *A.W. v. Red Roof Inns, Inc., et al.* | October 2, 2021 |
| 7 | 2:21-cv-4935 | *A.R. v. Wyndham Hotels & Resorts, Inc., et al.* | October 2, 2021 |
| 8 | 2:21-cv-5022 | *C.T. v. Red Roof Inns, Inc., et al.* | October 12, 2021 |
| 9 | 2:22-cv-1924 | *L.G. v. Red Roof Inns, Inc., et al.* | April 9, 2022 |
| 10 | 2:22-cv-2682 | *G.P. v. Wyndham Hotels & Resorts, Inc., et al.* | July 2, 2022 |
| 11 | 2:22-cv-2683 | *K.C. v. Choice Hotels International, Inc., et al.* | July 2, 2022 |
| 12 | 2:22-cv-2690 | *R.C. v. Choice Hotels International, Inc., et al.* | July 5, 2022 |
| 13 | 2:22-cv-2734 | *S.C. v. Wyndham Hotels & Resorts, Inc., et al.* | July 8, 2022 |
| 14 | 2:22-cv-2861 | *S.R. v. Wyndham Hotels & Resorts, Inc., et al.* | July 19, 2022 |
| 15 | 2:22-cv-3080 | *J.S. v. Choice Hotels International, Inc.* | August 9, 2022 |
| 16 | 2:22-cv-3185 | *T.E. v. Wyndham Hotels & Resorts, Inc., et al.* | August 19, 2022 |
| 17 | 2:22-cv-3202 | *B.D.G. v. Choice Hotels International, Inc.* | August 21, 2022 |
| 18 | 2:22-cv-3203 | *P.S. v. Six Continents Hotels, Inc., et al.* | August 21, 2022 |
| 19 | 2:22-cv-3256 | *A.K. W v. Red Roof Inns, Inc., et al.* | August 26, 2022 |
| 20 | 2:22-cv-3258 | *M.H. v. Red Roof Inns, Inc., et al.* | August 26, 2022 |
| 21 | 2:22-cv-3340 | *J.C. v. G6 Hospitality, LLC* | September 2, 2022 |
| 22 | 2:22-cv-3416 | *H.C. v. Red Roof Inns, Inc., et al.* | September 13, 2022 |
| 23 | 2:22-cv-3766 | *G.G. v. Red Roof Inns, Inc., et al.* | October 22, 2022 |
| 24 | 2:22-cv-3767 | *Y.S. v. Red Roof Inns, Inc., et al.* | October 22, 2022 |
| 25 | 2:22-cv-3768 | *A.Y. v. Red Roof Inns, Inc., et al.* | October 23, 2022 |
| 26 | 2:22-cv-3769 | *K.L. v. Red Roof Inns, Inc., et al.* | October 23, 2022 |
| 27 | 2:22-cv-3770 | *R.C.C. v. Red Roof Inns, Inc., et al.* | October 23, 2022 |
| 28 | 2:22-cv-3771 | *N.B. v. Red Roof Inns, Inc., et al.* | October 23, 2022 |
| 29 | 2:22-cv-3772 | *C.B. v. Red Roof Inns, Inc., et al.* | October 23, 2022 |
| 30 | 2:22-cv-3773 | *K.R.L. v. Red Roof Inns, Inc., et al.* | October 23, 2022 |
| 31 | 2:22-cv-3774 | *R.H. v. Red Roof Inns, Inc., et al.* | October 23, 2022 |
| 32 | 2:22-cv-3776 | *J.B. v. Red Roof Inns, Inc., et al.* | October 24, 2022 |
| 33 | 2:22-cv-3778 | *H.S. v. Red Roof Inns, Inc., et al.* | October 24, 2022 |
| 34 | 2:22-cv-3782 | *R.K. v. Red Roof Inns, Inc., et al.* | October 24, 2022 |
| 35 | 2:22-cv-3784 | *R.Z. v. Red Roof Inns, Inc., et al.* | October 24, 2022 |
| 36 | 2:22-cv-3786 | *D.K. v. Red Roof Inns, Inc., et al.* | October 24, 2022 |
| 37 | 2:22-cv-3787 | *K.D. v. Red Roof Inns, Inc., et al.* | October 24, 2022 |

| 38 | 2:22-cv-3788 | *G.M.* v. *Choice Hotels International, Inc., et al.* | October 24, 2022 |
| 39 | 2:22-cv-3797 | *A.M. v. Wyndham Hotels and Resorts, Inc., et al.* | October 25, 2022 |
| 40 | 2:22-cv-3978 | *C.M. v. Choice Hotels International, Inc., et al.* | October 25, 2022 |
| 41 | 2:23-cv-3459 | *R.A. v. Best Western International, Inc., et al.* | October 10, 2023 |
| 42 | 2:23-cv-4195 | *A.M.G. v. Red Roof Inns, Inc., et al.* | December 20, 2023 |
| 43 | 2:23-cv-4258 | *C.M.G. v. Red Roof Inns, Inc., et al.* | December 28, 2023 |
| 44 | 2:23-cv-4256 | *D.E.G. v. Red Roof Inns, Inc., et al.* | December 28, 2023 |
| 45 | 2:24-cv-00389 | *J.N.K. v. Red Roof Inns, Inc., et al.* | January 31, 2024 |