UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

L.M.H.,                              :
                                     :
            Plaintiff,               :    Case No. 2:24-cv-1823
                                     :
      v.                             :    Judge Algenon L. Marbley
                                     :
RED ROOF INNS, *et al.*,             :    Magistrate Judge Elizabeth P. Deavers
                                     :
            Defendants.              :
                                     :

## OPINION & ORDER

This matter comes before this Court on Defendants Red Roof Inns, Inc.; RRF Holding Company, LLC; Red Roof Franchising, LLC; RRI West Management; R-Roof V, LLC; RRI, LLC; RRI III, LLC; and RRI Opco, LLC's ("RRI Defendants") motion to transfer venue or, in the alternative, to dismiss for failure to state a claim (ECF No. 27). For the following reasons, the Motion is **DENIED**. (ECF No. 27).

## I.      BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1595(a) ("TVPRA") and the Child Abuse Victims Rights Act, 18 U.S.C. § 2255(a) ("CAVRA"). Plaintiff L.M.H., a Colorado resident, alleges that she was repeatedly sex trafficked at 5823 Wilson Avenue, St. Louis, Missouri 63110 ("St. Louis RRI") from 2014—when she was only fourteen years old—to 2017. (ECF No. 1 ¶¶ 9, 30, 32). During this time, Plaintiff alleges that her trafficker "controlled her through physical violence and force," "made her engage in commercial sex acts for his financial benefit," and "posted ads of her online without her consent." (*Id.* ¶ 29).

In April 2024, Plaintiff sued the franchisors, managers, and operators of the St. Louis RRI ("**RRI Brand Defendants**");[1] and its owners and operators ("**RRI St. Louis Defendants**"),[2] seeking damages under CAVRA and the TVPRA. Plaintiff claims that RRI Brand Defendants and RRI St. Louis Defendants (together, "RRI Defendants") jointly operated the St. Louis RRI, with the RRI St. Louis Defendants employing operational staff and the RRI Brand Defendants employing management staff. (*Id.* ¶ 32). She explains that RRI Defendants' control and supervision over the St. Louis RRI included "collection and review of surveillance footage," "capture, retention, and analysis of . . . extensive guest data and detailed reports about hotel operations through reservation and property management systems," (ECF No. 1 ¶¶ 72, 86), "monitor[ing] news stories and law-enforcement reports regarding criminal activity," and "carefully monitoring online reviews and other customer feedback." (*Id.* ¶¶ 60–63). Plaintiff's reason for initiating this action in this district, as alleged in the Complaint, is that RRI Brand Defendants operated the St. Louis RRI "from a central location at the RRI corporate offices in New Albany, Ohio." (*Id.* ¶ 26).

Given the degree of control and supervision RRI Defendants maintained over the St. Louis RRI, Plaintiff asserts that RRI Defendants "knew or should have known about the pervasive sex

---

[1] "**RRI Brand Defendants**" include Red Roof Inns, Inc.; RRF Holding Company, LLC; Red Roof Franchising, LLC; and RRI West Management which, according to Plaintiff, "operated, controlled, and/or managed" the St. Louis RRI. (ECF No. 1 ¶ 14). Describing the relationship between these entities, Plaintiff alleges that Red Roof Inns, Inc. and RRI West Management share a common parent company (*id.* ¶ 13); Red Roof Inns, Inc. is the parent company of RRF Holding Company, LLC (*id.* ¶ 12); RRI Franchising is a direct subsidiary of RRF Holding Company, LLC. (*id.*); and RRI West Management; Red Roof Inns, Inc.; and Red Roof Franchising, LLC are corporate affiliates. (*Id.* ¶ 13).

[2] "**RRI St. Louis Defendants**" include R-Roof V, LLC, RRI, LLC, RRI III, LLC, and RRI Opco, LLC, which "owned, operated, controlled, and/or managed the [St. Louis] RRI"; are "corporate affiliate[s] of the RRI Brand Defendants."; and are "subject to common ownership and control with [RRI Brand Defendants] under the Westmont Hospitality Group." (ECF No. 1 ¶¶ 14–17).

trafficking at the St. Louis RRI" based on "obvious indicators" and "well-known 'red flags' for sex trafficking in the hospitality industry." (*Id.* ¶ 66). These signs included "paying with cash or prepaid cards, having high volumes of men who were not registered guests in and out of their room at unusual times, arriving with few possessions for extended stays, and other signs . . . ." (*Id.* ¶ 70). Aside from the trafficking she herself endured, Plaintiff alleges that "multiple trafficking victims [were] exploited at the subject RRIs prior to [L.M.H.'s] trafficking" who exhibited these "red flags" that were "observed by hotel staff and management." (*Id.*),

As for her own trafficking, Plaintiff alleges that employees at the St. Louis RRI "observed or were made aware of" these "obvious signs of trafficking," as well as other indicators of trafficking. (*Id.* ¶ 76). For example, the Complaint alleges that Plaintiff, a minor, stayed at the St. Louis RRI "on multiple occasions, often during school hours"; that she "check[ed] in with and stay[ed] on the property with her trafficker who was visibly significantly older than her"; that, at check-in, she appeared "emotional, nervous, scared, and showed signs of physical abuse"; that, at check-in, she had "few or no personal items and appear to be malnourished and/or have poor hygiene"; the hotel rooms were "paid for with cash or prepaid cards"; and that hotel staff would have observed her "high on drugs and alcohol while on the hotel property." (*Id.* ¶ 75).

Other indicators "consistent with the modus operandi of her trafficker," according to Plaintiff, included:

- Other females, including a minor, were present with Jane Doe (L.M.H.) and her trafficker at the St. Louis RRI.

- The "Do Not Disturb" door hanger was used very frequently.

- L.M.H. requested extra towels and linens from housekeeping but would often deny staff entry into the room. Hotel staff observed that she was dressed provocatively and was emotional, nervous, and scared.

- Jane Doe (L.M.H.)'s trafficker would post ads for her services on the internet using the hotel's Wi-Fi. Specifically, in February 2015, of these ads stated that L.M.H.'s services were being offered at the St. Louis RRI.

- Several johns entered and left Jane Doe (L.M.H.)'s room at unusual hours and were present at the hotel for brief periods of time.

- There was heavy foot traffic in and out of Jane Doe (L.M.H.)'s room involving men who were not hotel guests. This traffic was visible to hotel staff.

- After Jane Doe (L.M.H.) checked out, hotel cleaning staff would have noticed sex paraphernalia like condom wrappers and lubricant in the room.

(*Id.*). Plaintiff further contends that Defendants and her traffickers had "an implicit understanding" whereby they "provide[d] [] traffickers with a physical space . . . where they could imprison victims and sell them to 'johns'" and "provided these traffickers with the cover of a legitimate business as a venue where they could profit from sexual exploitation with a low risk of disruption." (*See id.* ¶¶ 101, 69).

Plaintiff's complaint, filed on April 17, 2024, asserts five "causes of action" against RRI Defendants: (1) a TVPRA claim for perpetrator liability; (2) a TVPRA claim for beneficiary liability; (3) a CAVRA claim; and (3) a claim for vicarious liability for TVPRA and CAVRA violations. (ECF No. 1 ¶¶ 117–135). On July 29, 2024, RRI Defendants moved to transfer this case to the Eastern District of Missouri under 28 U.S.C. 1404(a) or, in the alternative, to dismiss the complaint for failure to state a claim. (ECF No. 27). Plaintiff opposed (ECF No. 28), and RRI Defendants replied (ECF No. 29). This matter is now ripe for resolution.

## II. STANDARD OF REVIEW

### A.  Motion to Transfer under 28 U.S.C. § 1404(a)

Section 1404(a) governs the transfer of a civil action from one federal district to another. It provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). Courts considering transfer under § 1404(a) must first determine whether the requested transferee forum provides a proper venue for the action. *See e.g.*, *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 169 (S.D. Ohio 2012). As the Supreme Court explained, the statute "does not condition transfer on the initial forum's being 'wrong'." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59 (2013). Instead, it "permits transfer to any district where venue is also proper"—that is, "where the case might have been brought." *Id.* Once the court determines that the action could have been brought in the alternative venue, it proceeds to consider whether transferring the case would serve the convenience of parties and witnesses and otherwise promote the interest of justice. *See Tanyike v. United States*, 603 F. Supp. 3d 572, 580 (S.D. Ohio 2022). A court, guided by a number of private and public interest factors, enjoys "broad discretion" when making this determination. *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). Those factors include:

> (1) convenience of the witnesses; (2) availability of judicial process to compel the attendance of unwilling or uncooperative witnesses; (3) location of the relevant documents or records, and the relative ease of access to sources of proof; (4) residence and convenience of the parties; (5) relative financial means and resources of the parties; (6) locus of the operative facts and events that gave rise to the dispute or lawsuit; (7) each judicial forum's familiarity with the governing law; (8) the deference and weight accorded to the

plaintiff's choice of forum; and (9) trial efficiency, fairness, and the
interests of justice based on the totality of the circumstances.

See *Tanyike*, 603 F. Supp. 3d at 580 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)).

Transfer is inappropriate, however, when it merely shifts the burden of inconvenience. *See Van Dusen v. Barrack*, 376 U.S. 612, 645–46 (1964). A plaintiff's choice of forum is therefore entitled to "great deference" and "should only be rejected if the above factors weigh heavily in favor of the defendant." *In re Richardson-Merrell, Inc.*, 545 F. Supp. 1130, 1132-33 (S.D. Ohio 1982); *see also Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 672–73 (S.D. Ohio 2011) (noting that there is "a strong presumption in favor of a plaintiff's choice of forum," which may be overcome "'only when the private and public interest factors clearly point towards trial in the alternative forum.'" (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)). By contrast, a plaintiff's choice of forum is "given little weight" if "none of the conduct complained of occurred in the forum selected by the plaintiff." *Capitol*, 801 F. Supp. 2d at 672–73 (internal quotation marks and citations omitted).

The moving party bears the burden of establishing that transfer is warranted to allow for the litigation to proceed in a more convenient forum, not merely "a forum likely to prove equally convenient or inconvenient." *Van Dusen*, 376 U.S. at 645–46; *Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1049 (S.D. Ohio 2002).

### B. Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

A district court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). In ruling on a 12(b)(6) motion, a court must construe the complaint in the light most favorable to the non-moving

party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, the court must resolve the conflict for the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

The court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). To survive dismissal, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III.  LAW & ANALYSIS

### A.  Motion to Transfer to the Eastern District of Missouri

RRI Defendants argue that transfer to the Eastern District of Missouri is appropriate because Plaintiff is a Colorado citizen whose allegations arise from events in Missouri. (*See generally,* ECF No. 27 at 5–10).[3] In opposition, Plaintiff disputes that the location of relevant

---

[3] RRI Defendants do not argue that venue in the Southern District of Ohio is improper. Nor do the parties argue that the Eastern District of Missouri is an improper venue. For purposes of resolving this Motion, this Court therefore assumes that, under 28 U.S.C. § 1391(b), venue is proper in either district.

events is in Missouri because "a significant portion of her claims center on RRI Defendants' corporate wrongdoing originating from their Ohio headquarters." (ECF No. 28 at 25–26). In determining whether transfer is appropriate, this Court balances the private and public interest factors at stake.

### 1. Private Interest Factors

Private interest factors include convenience of witnesses, where the operative facts occurred, the location of the documentary evidence, and possibility of prejudice in either the forum or the transfer states. *W. Am. Ins. Co. v. Potts*, 908 F.2d 974 (6th Cir. 1990). While the plaintiff's choice of venue should typically be given considerable weight, such choice is given less weight when the cause of action "has little connection with the chosen forum." *DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 902-03 (S.D. Ohio 2013).

### a. Convenience of the Witnesses

Because Plaintiff alleges that she was trafficked at a Red Roof branded property in St. Louis, Missouri, RRI Defendants contend that the "potential witnesses" include but are not limited to: (1) Plaintiff's traffickers; (2) St. Louis RRI's staff; (3) law enforcement; (4) Plaintiff's family members; (5) johns and others that might have encountered Plaintiff; and (6) certain Red Roof employees. (ECF No. 27 at 6). According to Defendants, "[f]ew, if any, of these witnesses are Ohio residents." (*Id.*). RRI Defendants also contend that these witnesses, who reside in Missouri or Colorado, will be beyond the subpoena power of this Court at the time of trial. (*Id.*).

Plaintiff discounts RRI Defendants' assertions as speculative and conclusory. Given the time that has passed since L.M.H.'s trafficking, she argues that "it is possible and even likely that many of the witnesses who were present in Missouri at the time of . . . [her] trafficking do not currently live there." (ECF No. 28 at 28). She further maintains that the "witnesses who can testify

about RRI corporate matters are located at the headquarters in New Albany, Ohio." (*Id.*). And, "to the extent that the RRI Defendants assert that some witnesses are likely to be in Colorado," Plaintiff contends that this undermines Defendants' argument that the interests weigh in favor of transfer to Missouri. (*Id.*). Plaintiff also notes that RRI Defendants' concerns about compulsory process are unwarranted given the evolution of technology and availability of video depositions. (*Id.*).

This Court has analyzed this factor in another hotel sex trafficking case, observing that there is "no guarantee that non-party witnesses will be located at the scene of their trafficking" when "years have passed since [plaintiffs] were trafficked." *See In re Hotel TVPRA Litig.*, No. 2:22-CV-1924, 2023 WL 3075851, at *18–19 (S.D. Ohio Apr. 25, 2023) (citing *L.G. v. Red Roof Inns, Inc.*, No. 2:22-CV-1924, 2022 WL 4091837, at *4 (S.D. Ohio Sept. 7, 2022)).  Additionally, regardless of the location of this litigation, "there is no guarantee that non-party witnesses will be present or respond to subpoena." *Id*. at *18–19; *L.G.*, 2022 WL 4091837, at *4 (explaining that alleged sex traffickers are unlikely to appear at trial regardless of subpoena). And because "Red Roof has its principal place of business in the Southern District of Ohio," this Court reasoned that transfer would not necessarily make litigation more convenient, as it would still "inconvenience Defendants by requiring their executive witnesses to travel." *Id*.

Because RRI Defendants' proposed transferee court is likely to pose the same level of inconvenience, this factor thus weighs against transfer.

### b. *Locus of Operative Facts and Access to Proof*

RRI Defendants argue that the key actions and events here — the alleged trafficking — took place in Missouri and thus "any physical evidence—including the premise itself, is in St. Louis, Missouri —not Ohio." (ECF No. 27 at 8). They also argue that any evidence stemming from their corporate headquarters "is electronic and thus any burden is minimal and not decisive in

analyzing venue." (*Id.*). Plaintiff does not respond to Defendants' arguments about the electronic availability of corporate evidence but maintains that "the bulk of relevant evidence would be documents located or stored at their corporate headquarters." (ECF No. 28 at 28–29). In *L.G.*, this Court considered similar arguments and, in denying the motion transfer, explained:

> What occurred at the Defendants' headquarters in New Albany, Ohio, goes to the heart of Plaintiff's Complaint, pointing to Defendants' corporate knowledge and lack of proper training to hamper and detect trafficking on their properties. Plaintiff does not allege that the actual hotel employees were responsible for her trafficking, rather, the employees did not address the clear signs of Plaintiff's trafficking due to improper training and insufficient policies on the corporate level. While Plaintiff's alleged trafficking arose in Maryland and Virginia, the claim at issue arises in Ohio, based on Plaintiff's assertion that Defendants have corporate knowledge of the training and policies related to trafficking.

*See L.G.*, 2022 WL 4091837, at *4. Indeed, where the allegations revolve around sex trafficking and corporate policies to ignore said sex trafficking, this Court routinely finds assertions of a "generalized inconvenience—that the alleged trafficking took place at hotel locations in [another District], and therefore, relevant documents and witnesses will be located there—and not 'a specific hardship'" insufficient. *See Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 WL 1244192, at *4 (S.D. Ohio Mar. 16, 2020); *A.C. v. Red Roof Inns, Inc.*, No. 2:19-CV-4965, 2020 WL 3256261, at *3 (S.D. Ohio June 16, 2020).

Nor would it be too burdensome to transfer any records that allegedly exist in Missouri to Ohio. *See Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("[L]ocation of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."), *aff'd*, 599 F.3d 102 (2d Cir. 2010). Without "identifying some documentary evidence that would be unavailable in this district or is too bulky or difficult to transport, this factor matters little." *Doe S.W.*, 2020 WL 1244192, at *4.

Because "[t]he documents and information related to Defendants' alleged corporate knowledge are in Ohio, [] transferring this case to [Missouri] would merely shift the inconvenience." *L.G.*, 2022 WL 4091837, at *4. Defendants have therefore not demonstrated that this factor "clearly favor[s] a change of venue." *See Doe S.W.*, 2020 WL 1244192, at *1–*3 (quoting *MJR Int'l, Inc. v. Am. Arb. Ass'n,* No. 2:06-cv-0937, 2007 WL 2781669, at *3 (S.D. Ohio Sept. 24, 2007)).

### c.  *Plaintiff's Choice of Forum*

Plaintiff—a Colorado resident—chose to file this lawsuit in the Southern District of Ohio. Typically, "'unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *Reese*, 574 F.3d at 320 (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)); *see also Helmer v. Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.*, No. 1:20-CV-105, 2020 WL 5250435, at *5 (S.D. Ohio Sept. 3, 2020) ("A plaintiff's choice of venue . . . holds great weight and should only be disturbed upon a significant showing that the public and private interests at stake weigh in favor of transfer."). That said, where "'the cause of action has little connection with the chosen forum," a plaintiff's choice of forum is "given less weight than such choice would be given otherwise.'" *DRFP*, 945 F. Supp. 2d at 902-03 (quoting *Armco, Inc. v. Reliance Nat. Ins.*, No. C-1-96-1149, 1997 WL 311474, at *3 (S.D. Ohio Mar. 30, 1997)).

RRI Defendants argue that Plaintiff's choice of forum is a neutral factor because "Plaintiff is a Colorado resident who alleges damages from sex trafficking in St. Louis, Missouri." (ECF No. 27 at 8). But RRI Defendants fail to demonstrate that there is "*no* connection between the events at issue and this district." *Cf. Tanyike*, 603 F. Supp. 3d at 581 (emphasis added). As this Court explained above and in other cases, the executive decision-making relevant to Plaintiff's TVPRA

and CAVRA claims occurred at RRI's headquarters in New Albany, Ohio. *See L.G.*, 2022 WL 4091837, at *4 ("What occurred at the Defendants' headquarters in New Albany, Ohio, goes to the heart of Plaintiff's Complaint, pointing to Defendants' corporate knowledge and lack of proper training to hamper and detect trafficking on their properties."); *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *20 (recognizing that location of "Red Roof's executive decision-making would likely be at their headquarters in New Albany, Ohio.").

Accordingly, Plaintiff's choice of forum weighs against transfer.

### 2. Public Interest Factors

The public interest to be considered under § 1404(a) includes "[d]ocket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law." *Jamhour v. Scottsdale Ins. Co.,* 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002) (citing *Gulf Oil*, 330 U.S. at 508). RRI Defendants argue that trial in Ohio would be burdensome given that "the incident occurred in St. Louis, Missouri, involving Missouri hotel employees, St. Louis law enforcement, along with out-of-state traffickers and a non-resident Plaintiff." (ECF No. 27 at 9). They also assert that the "community affected by the trial is Missouri, and Missouri is the community that has familiarity with the RRI St. Louis, not Ohio." (*Id.*).

These arguments, however, again ignore Plaintiff's claims "center on RRI Defendants' corporate knowledge, their corporate negligence, and their receipt of financial benefit, all of which are centered at their corporate headquarters in this District." (ECF No. 28 at 30; *see* ECF No. 1 ¶ 64 ("Sex trafficking was a brand-wide problem for RRI originating from management level decisions at their corporate offices in Ohio.")). When a company is incorporated in a state, there

can be a compelling public interest in deciding a controversy involving that company at home. *North v. McNamara*, 47 F. Supp. 3d 635, 648 (S.D. Ohio 2014); *see L.G.*, 2022 WL 4091837, at *4.

RRI Defendants also note that, because "action aris[es] under . . . a federal statute, both courts are equally familiar with the controlling law and each would be competent to adjudicate that claim." (ECF No. 27 at 9-10 (quoting *Nat'l Republican Senatorial Comm. v. Fed. Election Comm'n*, 672 F. Supp. 3d 538, 548 (S.D. Ohio 2023)). Plaintiff, on the other hand, contends that "[c]oncentrating TVPRA litigation against RRI Defendants in this District avoids a situation where courts around the country are required to do duplicative work," and that transferring the case would serve only to distract from the merits of the litigation. (ECF No. 28 at 29 –30 (citing *In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *21)).

As both parties acknowledge, several pending cases in this District are related to this matter, which this Court has managed for years. Trying this case in this district would thus promote judicial economy, systemic integrity, and fairness. *See In re Hotel TVPRA Litig.*, 2023 WL 3075851, at *21 (finding that systemic integrity and fairness weighed against transferring TVPRA cases that do not present jurisdictional or venue deficiencies). Indeed, "having [] related litigation moving on a potentially conflicting track in a different district" frustrates the administration of justice. *Sacklow v. Saks Inc.*, 377 F. Supp. 3d 870, 881 (M.D. Tenn. 2019); *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different [d]istrict [c]ourts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.").

Accordingly, the public interest factors weigh against transfer. *See L.G.*, 2022 WL 4091837, at *4; *DRFP*, 945 F. Supp. 2d at 903 ("[T]he Court finds that—considering efficiency

and other practical concerns—[other] factors are balanced, if not outweighed, by the fact that this Court has already gained extensive experience and familiarity with this action.").

* * * *

RRI Defendants fail to show that the relevant factors are "strongly in favor of a transfer." *See First Bank of Marietta v. Bright Banc Sav. Assoc.*, 711 F. Supp. 893, 896–97 (S.D. Ohio 1988). This Court therefore **DENIES** RRI Defendants' motion to transfer. (ECF No. 27).

## B. Motion to Dismiss

In the alternative, RRI Defendants seek dismissal under Rule 12(b)(6). Specifically, RRI Defendants argue that Plaintiff fails to state a plausible claim for perpetrator, beneficiary, and vicarious liability under the TVPRA, and fails to state a claim under CAVRA. (ECF No. 27 at 10–23). This Court addresses each argument in turn.

### 1. Sufficiency of TVPRA Claims

RRI Defendants challenge the sufficiency of Plaintiff's allegations to state a plausible claim for liability under the TVPRA's civil provision, 18 U.S.C. § 1595. That provision provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). As the statutory text makes clear, Section 1595 therefore creates two kinds of civil liability: perpetrator liability and beneficiary (or participant) liability. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 552–53 (7th Cir. 2023). To establish a "violation of this chapter" under Section 1595(a), sex trafficking victims look to 18 U.S.C. § 1591, the provision of the TVPRA that sets forth criminal penalties for sex trafficking. Section 1591 provides:

> (a) Whoever knowingly—
>
>> (1) in or affecting interstate or foreign commerce, ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>>
>> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>>
>> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

Having extensively analyzed the civil liability of hotel defendants in TVPRA sex trafficking cases, *see S.R.*, 2024 WL 3226126, at \*2 (collecting cases), this Court begins by noting that a civil claim under Section 1595(a) can be a standalone claim, and defendants need not have committed the underlying criminal sex trafficking offense under Section 1591 for a plaintiff to maintain an action under Section 1595(a). *See M.A. v. Wyndham Hotels & Resorts, Inc*., 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019); *G.G.*, 76 F.4th at 553 n.4 ("Courts unanimously agree that a civil defendant under Section 1595 need not have violated Section 1591.") Additionally, Plaintiff's allegation that she is "a victim of sex trafficking within the meaning of § 1591" (ECF No. 1 ¶ 105) is sufficient, at the pleading stage, to establish that she is a "victim of a violation of this chapter" under 18 U.S.C. § 1595(a).

### a.   Perpetrator Claim

Plaintiff's first cause of action asserts that Defendants are liable as "perpetrators" of 18 U.S.C § 1591(a) violations. (ECF No. 1 ¶¶ 118–120). As relevant here, perpetrator liability occurs

if the defendant, "knowing . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act," either: (1) "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means" such a person, § 1591(a)(1); or (2) benefits from "participation in a venture" that has engaged in such acts, § 1591(a)(2). Section 1591(e) defines "participation in a venture" as "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)," § 1591(e)(4), and defines "venture" as "any group of two or more individuals associated in fact, whether or not a legal entity," § 1591(e)(6). *See M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 963 (S.D. Ohio 2019). As this Court recognized in *M.A.*, Section 1591's knowledge standard is much higher than the "should have known" standard required for beneficiary liability. *M.A.*, 425 F. Supp. 3d at 966. When a claim is based on age rather than force, fraud, or coercion, however, "the [plaintiff] need not prove that the defendant knew or recklessly disregarded the fact" that the victim was a minor, but only that "the defendant had a reasonable opportunity to observe" the victim. 18 U.S.C. § 1591(c).

Plaintiff seeks to hold RRI Defendants liable as both direct perpetrators and beneficiary perpetrators under § 1591(a) for knowingly "harbor[ing]" her in violation of 18 U.S.C. § 1591(a)(1) and for benefitting from knowingly "assisting, supporting, or facilitating" her trafficking in violation of 18 U.S.C. § 1591(a)(2).

Specifically, Plaintiff alleges that RRI Defendants "harbored" her by renting rooms to her traffickers "pursuant to an implicit agreement" under which RRI Defendants "not only provide[d] these traffickers with a physical space . . . where they could imprison victims and sell them to "johns" . . . but [] also provided these traffickers with the cover of a legitimate business as a venue where they could profit from sexual exploitation with a low risk of disruption." (ECF No. 1 ¶ 101).

16

Seeking dismissal of this claim, RRI Defendants first argue that Plaintiff's allegations are insufficient because the provision requires "actual knowledge or reckless disregard that Defendants were harboring or maintaining Plaintiff *and* that force, fraud, or coercion caused Plaintiff's sex trafficking." (ECF No. 27 at 12) (emphasis added). But as Plaintiff points out and the Sixth Circuit explained, "§ 1591(a) requires no proof of force, fraud, or coercion in the sex trafficking of a *child,* because a child cannot consent, whereas force, fraud, or coercion is a necessary element for the sex trafficking of an *adult.*" *United States v. Afyare*, 632 F. App'x 272, 287 (6th Cir. 2016). Under 18 U.S.C. § 1591(c), Plaintiff need only allege that RRI Defendants had "a reasonable opportunity to observe" that Plaintiff was a minor, and her Complaint satisfies that requirement. (*See e.g.*, ECF No. 1 ¶ 75 (alleging that Plaintiff was on the property "on multiple occasions, often during school hours" and "check[ed] in with and stay[ed] on the property with her trafficker who was visibly significantly older than her").

RRI Defendants nonetheless contend that "a hotel who is in the business of renting rooms to the public does not criminally harbor its guests simply by renting the guest a room." (*See* ECF No. 29 at 4). They argue that, in the context of Section 1591(a), "harbor" means "to receive secretly and conceal," (ECF No. 27 at 12) (citing *United States v. Vargas-Cordon*, 733 F.3d 366, 381–82 (2d Cir. 2013) (interpreting the term "harboring" in the context of harboring undocumented individuals under 8 U.S.C. § 1324)), and renting a room to the public does not meet that definition, (*id.*). This Court, however, has previously concluded that a plaintiff sufficiently alleges that a hotel defendant "knowingly harbored or maintained" her in violation of § 1591 where she alleges that "Defendants continued to rent rooms to her trafficker while accepting payments to keep quiet and allow the trafficking the continue." *See Doe v. Best W. Int'l, Inc*., No. 2:23-CV-3459, 2024 WL 3759761, at *6 (S.D. Ohio Aug. 12, 2024) (citing *United States v. Bhimani*, 2021 WL 5179196, at

*9 (M.D. Pa. Nov. 8, 2021) (denying corporation's motion for acquittal of conviction based on employee that "knowingly rented rooms to drug and sex traffickers")).

In *Ricchio*, the First Circuit found that a plaintiff sufficiently pled a claim that owner and operators of a motel "knowingly harbored" her "for the purpose of [a hotel guest's] object of obtaining her sexual labor or services" in violation of the TVPRA where she alleged that the motel continued to rent a room to a hotel guest after the guest's coercive and abusive treatment of the plaintiff became clear. *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017). Courts have since relied on *Ricchio* to conclude that "providing lodging to someone for the purposes of obtaining her labor or services against her will" constitutes "harboring" under the TVPRA. *See Mouloki v. Epee*, 262 F. Supp. 3d 684, 698 (N.D. Ill. 2017); *see also Doe v. Hotels*, No. 6:23-CV-1012-JSS-LHP, 2024 WL 2955728, at *6 (M.D. Fla. June 12, 2024), reconsideration denied sub nom. Jane Doe K.R. v. Choice Hotels, No. 6:23-CV-1012-JSS-LHP, 2024 WL 4373374 (M.D. Fla. Oct. 2, 2024) ("Plaintiff alleges that [hotel owner and operator] entered into a tacit agreement with Plaintiff's traffickers to provide them with a room and shelter whereby Plaintiff could be trafficked for profit. The court finds these allegations sufficient to state a claim for 'harboring' Plaintiff under 18 U.S.C. §§ 1591(a), 1595."); *Doe v. Wyndham Hotels & Resorts*, No. 2:23-CV-01676-DAD-CSK, 2025 WL 85831, at *15 (E.D. Cal. Jan. 7, 2025) (rejecting hotel defendant's "argument that plaintiff's SAC fails to sufficiently allege that she was 'harbored'" and [] deny[ing] its motion to dismiss perpetrator liability claim as imputed to it through vicarious liability," noting that "hotels can 'harbor' under the TVPRA through the act of renting rooms to a trafficker"); HARBORING, Black's Law Dictionary (12th ed. 2024) ("The act of affording lodging, shelter, or refuge to a person, esp. a criminal or illegal alien.").

Construing the allegations in Plaintiff's favor at this stage, this Court concludes that she sufficiently alleges that RRI Defendants knowingly "harbored" her in violation of § 1591(a)(1) by renting rooms to her traffickers for the purpose of causing Plaintiff, a minor, to engage in commercial sex acts.

As to Plaintiff's § 1591(a)(2) claim, RRI Defendants argue that the provision "requires that a defendant *knowingly* benefit[s] from *knowingly* participating in child sex trafficking," (ECF No. 29 at 2 (citing *Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022)), and that a defendant must "actually participate and commit some 'overt act' that further the sex trafficking aspect of the venture." (*Id.* (quoting *Afyare*, 632 F. App'x at 286)). Plaintiff's allegations, according to Defendants, "readily admit" that RRI Defendants' "encouragement" of any sex trafficking was "implicit," and thus the Complaint fails to state a 1591(a)(2) claim. (*Id.* at 3; *see* ECF No. 1 ¶ 84(d) (alleging that "RRI Defendants, including through the hotel staff and management they employed, [] facilitated . . . [Plaintiff's] trafficking" by "implicitly encouraging the activities of [her] traffickers . . . by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff")).

To survive dismissal on her § 1591(a)(2) claim, Plaintiff must allege that, in addition to RRI Defendants having a reasonable opportunity to observe that she was a minor who was caused to engaged in commercial sex acts, RRI Defendants had actual knowledge that by renting rooms to Plaintiff's traffickers, they were "assisting, supporting, or facilitating" the "recruit[ing], entic[ing], harbor[ing], transport[ing], provid[ing], obtain[ing], advertis[ing], maintain[ing], patroniz[ing], or solicit[ing]" of Plaintiff. 18 U.S.C. §§ 1591(a)(1)–(2), (e)(4). The Complaint alleges that RRI St. Louis were familiar with Plaintiff's traffickers and gave in to requests they

"freely" made "that would facilitate their trafficking activities without concern for detection or interference." (ECF No. 1 ¶ 101). She alleges, for example, that hotel staff accepted cash payments and did not require identification from appropriate parties, "allow[ing] traffickers to take steps that would minimize their traceability to law enforcement, such as"; and that they provided "additional services to [Plaintiff's] traffickers . . . including but not limited to, internet access, excessive towels, and extra housekeeping services" to clean out the evidence of "the activities of the trafficking venture once the traffickers vacated." (*Id.*).

The reasonable inference these allegations create is that (1) RRI Defendants had a reasonable opportunity to observe that Plaintiff, a minor, was engaging in commercial sex acts; (2) they knew that they financially benefitted from her traffickers' continuous room rentals; and (3) they knew they were "assisting, supporting, or facilitating" Plaintiff's trafficking by accepting cash payments, foregoing identification requirements, and providing extra housekeeping services to cover the traffickers' tracks after they left. Plaintiff's allegations establish the hotel staff's knowledge, which is imputed to RRI Defendants, that Plaintiff's traffickers caused her to "engage in . . . commercial sex act[s]." 18 U.S.C. § 1591(a).

Because Plaintiff's allegations are sufficient to satisfy the requirements of § 1591(a)(1) and § 1591(a)(2), RRI Defendants' motion to dismiss Plaintiff's perpetrator claim is **DENIED**.

### b. Beneficiary Claim

Plaintiff's claim under the TVPRA's beneficiary theory of liability, § 1595(a) (providing for civil actions against "the perpetrator [] or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged" in § 1591 violations) does not require actual knowledge. To survive dismissal on this claim, the Complaint must plausibly allege that: (1) RRI

20

Defendants "knowingly benefitted, financially or by receiving anything of value"; (2) from participating in a venture; [and] (3) that they "knew or should have known [that the venture] engaged in an act in violation of [the TVPRA]." § 1595(a). As this Court noted elsewhere, "a plaintiff may satisfy these elements by showing that 'defendant's own acts, omissions, and state of mind establish each element.'" *See Doe v. Best W. Int'l, Inc.*, No. 2:23-CV-3459, 2024 WL 3759761, at *4 (S.D. Ohio Aug. 12, 2024) (quoting *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021)).

*(1) Knowing Benefit*

The "knowing benefit" element merely requires that RRI Defendants knowingly receive a financial benefit, not that RRI Defendants have actual knowledge of an illicit venture. *A.C.*, 2020 WL 3256261, at *4. As this Court found in *M.A.*, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965; *accord H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019); *see also J.L.*, 521 F. Supp. 3d at 1061 (concluding that allegations that a hotel defendant received a percentage of room revenue where trafficking occurred, was sufficient to meet the knowing benefit element under 18 U.S.C. § 1595(a)); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1137 (D. Colo. 2019) (finding that the forced labor provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach").

Because Plaintiff alleges that RRI Defendants rented rooms to her traffickers and benefited financially from those rentals (ECF No. 1 ¶¶ 93, 96, 101), Plaintiff's allegations are enough to satisfy the element of "knowing benefit" under Section 1595(a).

*(2) "Participated in a venture"*

Plaintiff has also alleged sufficient facts to establish that Defendants' conduct constitutes "participation in a venture" under Section 1595(a). As this Court held in *M.A.*, Defendants need not have actual knowledge of the sex trafficking or perform an overt act to have "participated" in a sex trafficking venture for TVPRA liability to attach, "otherwise the 'should have known' language in § 1595(a) would be meaningless." 425 F. Supp. 3d at 971; *see also G.G.*, 76 F.4th 544 (participation under TVPRA's civil remedy provision does not require direct participation, criminal violation of TVPRA, or actual knowledge of criminal wrongdoing); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 937 (D. Or. 2020) (agreeing with this Court's reasoning in *M.A.* that a plaintiff is "not required to allege actual knowledge of a sex trafficking venture or the performance of an overt act in order to sufficiently plead the 'participation in a venture' element of her § 1595 claim").

Plaintiff, however, "must allege at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *See M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013)). L.M.H.'s allegations here—that RRI Defendants were "receiv[ing] financial benefits from operating the subject RRIs, including revenue generated specifically by renting rooms to traffickers"—satisfies the "participation in a venture" element. (*See* ECF No. 1 ¶ 96).

Resisting this conclusion, RRI Defendants argue that the "legitimate and routine commercial operations cannot constitute participation in a venture that violates the TVPRA." (ECF No. 27 at 22). In support, they cite the Eleventh Circuit's decisions in *Doe #1 v. Red Roof Inns, Inc.*, 21 F. 4th 714 (11th Cir. 2021) and *K. H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th

Cir. Feb. 9, 2024). In *Doe # 1*, the Eleventh Circuit held that the Section 1595(a) beneficiary claims against hotel franchisors failed because the plaintiffs "provided no plausible allegations that the franchisors took part in the common undertaking of *sex trafficking*." *Doe #1*, 21 F. 4th at 721 (emphasis added). According to the Eleventh Circuit, the Does' allegations "that the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels" were insufficient because "observing something is not the same as participating in it." *Id. Riti* likewise rejected a similar claim, reiterating that "allegations of financial benefit alone are not sufficient to establish that the defendant participated in a *sex trafficking* venture and observing signs of sex trafficking is not the same as participating in it." *Riti*, 2024 WL 505063, at *4 (emphasis added).

But both *Doe* and *Riti* analyzed plaintiffs' claims that defendants participated in a *sex-trafficking* venture, not the commercial ventures that L.M.H. pleads here. (*See* ECF No. 1 ¶ 95 ("Defendants knowingly received a financial benefit from participating in a venture, in the form of a continuous business relationship and implicit understanding, the population of sex traffickers operating out of the St. Louis RRI, including L.M.H.'s trafficker (hereinafter 'Venture 1')"); *id.* ¶ 104 ("Defendants also knowingly received a financial benefit from participating in a commercial hotel-operating venture at the St. Louis RRI (hereinafter 'Venture 2').")). In *Doe #1*, the Eleventh Circuit recognized that its analysis may have been different if the plaintiffs had alleged that the hotel franchisor defendants had participated in commercial ventures operating the hotel rather than alleging that they participated in sex-trafficking ventures. 21 F.4th at 727. The *Doe #1* plaintiffs, however, had not done so and had refused an opportunity to amend. *Id*. Thus, neither *Doe #1* nor *Riti* applies to the commercial ventures that L.M.H. pleads here. *See C.T.*, 2023 WL 3510879, at *4 ("Since this case finds itself in waters the Eleventh Circuit declined to wade

23

in, *Doe #1* is not determinative."); *A.R. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04935, 2022 WL 17741054, at *7 (S.D. Ohio Dec. 16, 2022) (because plaintiff "alleges that Defendant 'participated in a commercial business venture under § 1595[ ] by receiving royalties from Plaintiff's traffickers renting rooms at their branded locations,'" the Eleventh Circuit's decision in *Doe # 1* "is not controlling"). Indeed, both the Eleventh and Seventh Circuits have recognized that the relevant "venture" under Section 1595 need not be "specifically a sex trafficking venture" and can instead be a "commercial venture" like running or expanding a business that facilitates sex trafficking. *See G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023) (citing *Doe #1*, 21 F.4th at 727).

Because Plaintiff's allegations raise a plausible inference that RRI Brand Defendants participated in a hotel-operating commercial venture with RRI St. Louis Defendants that rented rooms to people that they knew or should have known were engaged in child sex trafficking, the Complaint satisfies the "participation in a venture" requirement. *See M.A.*, 425 F. Supp. 3d at 968 (defendant who continues an ongoing business relationship with traffickers, including by continuing to rent rooms to them, after the defendant should know that the business relationship facilitates trafficking, participates in a §1595(a) venture); *A.R.*, 2022 WL 17741054, at *7 (recognizing defendant's "business venture with the franchisee hotels" as sufficient to show participation in a venture under Section 1595); *T.P.*, 2022 WL 17363234, at *11 (recognizing this theory of venture).

### (3) *"Knew or should have known" that the venture violated the TVPRA*

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. Unlike a perpetrator claim, RRI Defendants need not have actual knowledge of trafficking crimes for beneficiary liability to attach,

as the "should have known" language in Section 1595(a) permits constructive knowledge. *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles*, 937 F. Supp. 2d at 288–89).

RRI Defendants' arguments that Plaintiff fails to satisfy this element are multi-fold. First, they contend that "the 'obvious' signs Plaintiff alleges are not tied to any RRI St. Louis employee." (ECF No. 27 at 18). Second, they argue that the signs allegedly observed by employees at the St. Louis RRI—Plaintiff's trafficker using prepaid cards; condoms or lubricant left in the hotel rooms after check-out; heavy foot traffic in and out of Plaintiff's room; and Plaintiff dressing provocatively—do not "plausibly suggest Defendants knew or should have known Plaintiff was allegedly being trafficked." (*Id.*). Third, RRI Defendants emphasize that "[b]road allegations of sex trafficking in the hotel industry do not allege that Defendants had knowledge that *this venture* or *this Plaintiff* was subject to trafficking at a particular hotel." (*Id.* at 19). Finally, according to RRI Defendants, Plaintiff cannot establish constructive knowledge "by listing customer reviews and news articles about various Red Roof branded properties not at issue here." (*Id.* at 20).

This Court has previously held that a defendant's notice of "the prevalence of sex trafficking generally at their hotels," the failure "to take adequate steps to train staff in order to prevent its occurrence," and signs that "should have alerted staff to [Plaintiff's] situation" meet the constructive knowledge requirement. *M.A.***, 425 F. Supp. 3d at 968.** *Id.* at 968. In comparable environments, this Court has also rejected arguments that hotel defendants "must have had knowledge or constructive knowledge with respect to Plaintiff specifically and that a generalized awareness of sex trafficking in its low-cost hotels is insufficient." *See T.D.P. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 784, 798–99 (S.D. Ohio 2024). As this Court reasoned in *T.D.P.*, "the express terms of [18 U.S.C. § 1595] impose liability for benefiting from a venture that the Defendant knew

or should have known was engaged in violations of § 1591, not violations of § 1591 with respect to a particular person." *Id.*

Taken together, Plaintiff's allegations support a claim under the TVPRA's beneficiary theory because they raise a plausible inference that RRI Defendants "should have known" about the nature of the venture. Specifically, in addition to the "red flags" RRI Defendants cite and the broader problem of sex trafficking in the hotel industry, Plaintiff alleges that her trafficker "would post ads for her services on the internet using the hotel's Wi-Fi" which "in February 2015, "stated that L.M.H.'s services were being offered at the St. Louis RRI." (ECF No. 1 ¶ 75). Plaintiff also alleges that, at check in, hotel staff observed her appearing "emotional, nervous, scared, and show[ing] signs of physical abuse" and had "few or no personal items and appear to be malnourished and/or have poor hygiene"; that she "check[ed] in with and stay[ed] on the property with her trafficker who was visibly significantly older than her"; and that the hotel rooms were "paid for with cash or prepaid cards." (*Id.*). Plaintiff also alleges that RRI Defendants "employed the hotel staff"; had "direct observations of hotel staff, including management-level staff"; and exercised direct, day-to-day control over the St. Louis RRI through, among other things, the "collection and review of surveillance footage," and the "capture, retention, and analysis of . . . extensive guest data and detailed reports about hotel operations through reservation and property management systems." (*See* ECF No. 1 ¶¶ 70–74).

Plaintiff's allegations are sufficient, at the motion to dismiss stage, to suggest that RRI Defendants should have known that sex trafficking was occurring. While, ultimately, these allegations may be unsubstantiated on a fuller record, they satisfy the three-pronged requirement of 18 U.S.C. § 1595 to survive a motion to dismiss. *See M.A.,* 425 F. Supp. 3d at 971–72 (denying motion to dismiss of hotel parent company defendants where plaintiff pled that defendants

controlled employee training, room pricing, provided online booking platform, and conducted inspections); *T.D.P.*, 725 F. Supp. 3d at 798–99.

### c. Indirect Liability Claim

Plaintiff' also asserts that, in addition to direct liability, RRI Defendants are liable for TVPRA violations under theories of vicarious liability, specifically as they pertain to joint venture, alter ego, and agency. (*See* ECF No. 1 ¶¶ 129–131). RRI Defendants urge dismissal of Plaintiff's vicarious liability claim for two reasons, but neither is persuasive.

### (1) Vicarious Liability under the TVPRA

RRI Defendants argue that "vicarious liability is not a viable claim under the TVPRA," because the statute "predicates liability on a defendant's personal knowledge and individual participation in a venture, which "represents a 'clear and explicit' choice to forgo common law indirect liability principles." (ECF No. 27 at 20 – 21). But although the TVPRA does not address the issue of indirect or vicarious liability, this Court is guided by "the rule of statutory construction [] that statutes are to be interpreted with reference to the common law and generally be given their common law meaning absent some indication to the contrary." *See United States v. Monasterski*, 567 F.2d 677, 682 (6th Cir. 1977) (citing *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952); *Thomas v. United States*, 189 F.2d 494, 501 (6th Cir.), *cert. den.* 342 U.S. 850 (1951)); *see Meyer v. Holley,* 537 U.S. 280, 285–86 (2003) ("[T]he Court has assumed that, when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules.").

For this reason, federal courts adjudicating this issue routinely rely on common law to fill in the gaps. *See T.D.P.*, 725 F. Supp. 3d at 799 ("A plaintiff can also satisfy the elements of § 1595's beneficiary theory by imputing to the defendant the acts, omissions, and state of mind of an agent

of the defendant through indirect or vicarious liability." (citation and internal quotation marks omitted)); *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1232 (M.D. Fla. 2023) ("Upon review of the relevant authority, the Court declines to find that the TVPRA precludes vicarious liability."); *J.L.*, 521 F. Supp. 3d at 1064–65 ("While the TVPRA is silent on the issue of indirect liability, numerous district courts have rejected the argument that the TVPRA does not permit agency liability.").

The Sixth Circuit, to be sure, "has yet to rule on whether the federal or state common law of vicarious liability should be applied under the TVPRA." *See T.D.P.*, 725 F. Supp. 3d at 799. Nonetheless, this Court and other district courts have applied state and federal common law of vicarious liability to assess indirect liability claims under the TVPRA. *See e.g.*, *M.A.*, 425 F. Supp. 3d at 971 (applying Ohio agency law); *A.B. v. Marriott Intern., Inc.*, 455 F. Supp. 3d 171, 194–95 (E.D. Pa. 2020) (applying Pennsylvania agency law); *S.J.*, 473 F. Supp. 3d at 158–59 (applying New York agency law); *Doe by Doe v. Piraino*, 688 F. Supp. 3d 635, 652 (M.D. Tenn. 2023) ("Federal common law agency principles apply to [TVPRA] claims."); *J.L.*, 521 F. Supp. 3d at 1064 ("Because the TVPRA is silent [on the issue of indirect liability], courts have held that the federal common law of agency should apply."); *A.B.*, 484 F. Supp. 3d at 939 ("examin[ing] vicarious liability as a question of federal common law."); *see also S.C. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 771, 778 (N.D. Ohio 2024) ("Courts split on whether to apply federal common law or state law. But either choice leads to the same outcome."); *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624, 649 (E.D. Mich. 2024) ("find[ing] that the analysis is largely the same under federal common law and Michigan law and, as such, will . . . apply Michigan common law")

Seeking to circumvent these well-settled principles, RRI Defendants urge this Court to adopt the position in *Doe v. Varsity Brands, LLC*, No. 1:22-CV-02139, 2023 WL 4931929 (N.D.

Ohio Aug. 2, 2023), which held that 18 U.S.C. § 2255—the section of the Child Abuse Victims' Rights Act ("CAVRA") that provides a civil cause of action for certain enumerated crimes—does not provide for secondary liability. (*See* ECF No. 27 at 31 (citing *Varsity Brands*, 2023 WL 4931929, at *7-8)). But like other federal courts assessing indirect liability claims under CAVRA, this Court analyzed the statutory text and found "no reason to believe that Congress intended to prohibit plaintiffs from suing beneficiaries of and participants in the many crimes enumerated in [18 U.S.C.] § 2255." *See T.D.P.*, 725 F. Supp. 3d at 791; *see also Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1339 (S.D. Fla. 2012) (concluding that a cruise line could be held liable under 18 U.S.C. § 2255 for the sexual crimes of its employees).

Because this Court holds that the TVPRA allows for vicarious liability, RRI Defendants' motion to dismiss Plaintiff's vicarious liability claims on this basis must be rejected.

### (2) Principle-Agency Liability

RRI Defendants' second argument, which challenges the sufficiency of Plaintiff's allegations to support an agency relationship, is also unavailing. As this Court has recognized, the Sixth Circuit looks to the Restatement of Agency when applying "federal common law principles of agency." *See Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 586 (S.D. Ohio 2016).[4] The Restatement defines agency as "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's

---

[4] As this Court previously outlined, the Sixth Circuit has yet to rule on whether federal or state common law governs vicarious liability claims under the TVPRA. *See T.D.P.*, 725 F. Supp. 3d at 799. While this Court has entertained arguments for both given the nearly identical analysis required under federal and Ohio common law, this Court will proceed under a federal common law analysis of the issue. *See id.* at 799–800 (explaining that "[t]his approach brings the analysis in line with the Sixth Circuit's approach to applying the federal common law of vicarious liability to federal statutes that do not expressly provide direction on vicarious liability arguments").

behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006); *ABS Indus., Inc. ex rel. ABS Litig. Tr. v. Fifth Third Bank*, 333 F. App'x 994, 1000 (6th Cir. 2009). A principal-agent relationship is therefore "characterized by the presence of two elements": (1) "an indication by the principal that the agent will act on his behalf and subject to his control"; and (2) "a manifestation of consent by the agent so to act." *Auger v. Abb Flexible Automation, Inc.*, 34 F. App'x 160, 164 (6th Cir. 2002).

A defining element of agency "is the principal's right to control the agent's actions," particularly, "[t]he power to give interim instructions." Restatement (Third) of Agency § 1.01 cmt. f ("The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents."); *accord Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 278 (2d Cir. 2013). As a result of that power, "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998) (quoting Restatement (Second) of Agency § 219(1) (1957)).

While the mere existence of a franchise does not establish an agency relationship, the franchise model does not preclude wholesale franchisors from vicarious liability under an agency theory. *Bricker v. R & A Pizza, Inc.*, 804 F. Supp. 2d 615, 623 (S.D. Ohio 2011) ("[T]he existence of a franchisor-franchisee relationship between persons does not in itself preclude the existence of a principal-agent relationship between them." (internal quotation marks and citations omitted)); *see also* Restatement (Third) of Agency § 1.01 cmt. g ("Performing a duty created by contract may well benefit the other party but the performance is that of an agent only if the elements of agency are present."). To determine whether "a principal-agent relationship exists, courts consider the

same factors 'as in the absence of a franchisor-franchisee relationship.'" *Bricker*, 804 F. Supp. 2d at 623 (quoting *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986)).

Although the existence and extent of the agency relationship is a question of fact, a plaintiff must sufficiently allege that an agency relationship existed for her complaint to survive a Rule 12(b)(6) motion to dismiss. *See Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 661 (6th Cir. 2005) ("Given that the existence of an agency relationship is a question of fact, rather than one of law, . . . the court should have denied [the defendant's] motion if any conflicting evidence of an agency relationship between plaintiffs and [the defendant] was presented."); *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 447 (D.C. Cir. 1990) ("It is . . . clear that the plaintiff bears the burden of asserting facts sufficient to withstand a motion to dismiss regarding the agency relationship.").

Therefore, to succeed under an agency theory, Plaintiff's allegations must establish that: (1) RRI Brand Defendants and its franchisees (or operators of the St. Louis RRI) are in an agency relationship; and (2) that the St. Louis RRI or their staff are plausibly liable under Section 1595(a).

As to the first requirement, Plaintiff alleges sufficient facts, beyond the speculative level, to show that RRI Brand Defendants exercised day-to-day control over the St. Louis RRI for purposes of an agency relationship. (*See* ECF No. 1 ¶ 97). For example, she alleges that RRI Brand Defendants: (1) controlled all details of the guest reservation, check-in, and payment processes through management of and control over all systems used for those processes; (2) controlled room prices, discounts, and reward programs; (3) required franchisees to use their centralized property management system; (4) collected reservation, payment, and occupancy data through a fully integrated database maintained by RRI Brand Defendants; (5) regularly inspected RRI branded properties; and (6) dictated, supervised, and oversaw policies and protocols regarding detecting

and responding to human trafficking. (*Id.* ¶¶ 72, 86–87). These allegations satisfy the pleading standards of Federal Rule of Civil Procedure 8 to demonstrate RRI Defendants' control over RRI St. Louis Defendants for purposes of an agency relationship.

Plaintiff's factual allegations likewise support the inference that RRI St. Louis Defendants, as Franchisees, are plausibly liable under Section 1595(a) through: (1) "knowingly benefit[ting], financially or by receiving anything of value"; (2) from participating in a venture; (3) that they "should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

First, Plaintiff alleges that RRI St. Louis Defendants rented rooms to traffickers and financially benefited from their trafficking ventures, therefore satisfying the first prong. (ECF No. 1 ¶¶ 96). RRI Defendants' contention that the Complaint contains "no allegations" that "any employees 'knowingly benefitted' from a trafficking venture" lacks merit. (*See* ECF No. 27 at 21). As explained in Part III.B.1.b (Beneficiary Claim), *supra*, the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to satisfy the "knowing benefit" element.

Second, Plaintiff's allegations raise a plausible inference that RRI St. Louis Defendants, along with RRI Brand Defendants, participated in a hotel-operating commercial venture that profited from Plaintiff's sex trafficking. (ECF No. 1 ¶ 104). Finally, the Complaint plausibly alleges that RRI St. Louis Defendants had at least constructive knowledge that Plaintiff was being trafficked as a minor. (*See e.g.*, *id.* ¶ 75). RRI Defendants' contention that the Complaint contains "no allegations" that the "organizations, independent of their employees, had any knowledge of Plaintiff's trafficking," (ECF No. 27 at 31–32), misunderstands the beneficiary theory of TVPRA civil liability. As explained in Part III.B.2.a.ii, *supra*, "actual knowledge" is not required for a plaintiff to hold defendants civilly liable as beneficiaries of her sex trafficking.

Because Plaintiff's allegations, viewed most favorably to her, satisfy the three-pronged requirement of 18 U.S.C. § 1595 to hold RRI Defendants and their agents liable as beneficiaries of TVPRA violations, RRI Defendants' motion to dismiss the vicarious liability claim is **DENIED**.

### 2. Sufficiency of CAVRA Claim

Plaintiff also seeks to hold Defendant liable under the Child Abuse Victims Rights Act, 18 U.S.C. § 2255(a) ("CAVRA"). Under CAVRA:

> Any person who, while a minor, was a victim of a violation of section ... 1591 [among others] ... and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.

18 U.S.C. § 2255(a).

Defendants argue that "[t]he plain language of the statute makes clear that Plaintiff cannot allege a plausible claim against Defendants because Plaintiff does not allege she was personally injured because of Defendants' violation of Section 1591(a)." (ECF No. 27 at 19–20). Plaintiff responds that CAVRA "requires that the plaintiff be a victim of § 1591, but it does not require that the defendant be a criminal perpetrator under this Section." (ECF No. 28 at 23).

As this Court and others have observed,[5] § 2255 does not specify against whom a lawsuit may be brought. *Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1339

---

[5] On different briefing, this Court concluded that a plaintiff sufficiently alleged a § 2255 claim on the theory that the plaintiff could show that the defendant itself, Wyndham Hotels, violated § 1591, the criminal portion of the TVPRA, by a preponderance of the evidence. *T.E. v. Wyndham Hotels & Resorts, Inc.*, 2023 WL 5531441, at *10 (S.D. Ohio Aug. 28, 2023). When *T.E.* was decided, the interpretation of § 2255 above had not been argued to this Court. Given that this is a developing area of the law, and the Parties' arguments have evolved accordingly, this Court is now better positioned to analyze the issue and finds the above interpretation persuasive.

(S.D. Fla. 2012) (concluding that a cruise line could be held liable under § 2255 for the sexual crimes of its employees). In light of that silence, the Court is guided by one of the most familiar canons of statutory interpretation: "courts may not add or subtract words from a statute." Id. By asking this Court to conclude that only perpetrators can be held liable, Defendant "effectively asks this Court to re-write the statute by inserting (after 'may sue') the words 'the offender' or 'the perpetrator.'" Id. at 1340. Congress has added similar language in analogous scenarios, and could have done so here, had it intended to limit liability to the criminal perpetrator. Id. As this Court reads it, the absence of a grammatical object in § 2255(a) is conspicuous and, therefore, likely intentional.[6] The text provides no reason to believe that Congress intended to prohibit plaintiffs from suing beneficiaries of and participants in the many crimes enumerated in § 2255, so long as plaintiffs' claims comport with the traditional requirements of standing—injury in fact, causation, and redressability.[7]

Plaintiff here has sufficiently alleged that she was injured when she was trafficked as a minor in violation of § 1591. Her allegations are also sufficient, at this stage, to establish RRI Defendants' liability as perpetrators of TVPRA violations, see Part.III.B.1.a (Perpetrator Liability), supra. Defendants' alleged benefit from participating in a venture that they knew or should have

---

[6] This Court acknowledges, as it has before, In re Hotel TVPRA Litigation, 2023 WL 3075851, at *6, that a House Report from 1998 indicates that "[i]t is the intention of the Committee that only the offender who perpetrated the offense against the minor is liable for damages under this section." H.R. REP. 105-557, 23 (1998). But the text of the statute is the ultimate reflection of Congress's intent. Congress has revised § 2255 several times and not seen fit to add language specifying that only offenders or perpetrators of the criminal predicate may be liable, despite apparent awareness of the issue.

[7] "The fact that § 2255 is silent as to vicarious liability does not undercut this conclusion. Congress's repeated silence as to persons liable is much more conspicuous than its silence as to vicarious liability, and indeed supports the availability of vicarious liability." G.M. v. Red Roof Inns, Inc., No. 2:22-CV-3788, 2024 WL 1347737, at *10 n. 4 (S.D. Ohio Mar. 29, 2024), partially amended on other grounds on reconsideration sub nom. In re Hotel TVPRA Litig., No. 2:21-CV-4933, 2024 WL 4945135 (S.D. Ohio Dec. 3, 2024).

known was engaged in child sex trafficking, as discussed above, is also enough to establish causation for purposes of a standing analysis. *See Rieves v. Town of Smyrna, Tennessee*, 67 F.4th 856, 862 (6th Cir. 2023) (holding that "the plaintiff need not prove that the defendant was the sole cause of his injury as long as harm is a 'predictable effect' of the defendant's actions on the decisions of third parties."); *G.M.*, 2024 WL 1347737, at * 11. And Plaintiff's harm is one that a court can redress through damages. *G.M.*, 2024 WL 1347737, at *11. Accordingly, this Court concludes that Plaintiff has pleaded sufficient allegations to survive a motion to dismiss on her CAVRA claim.

RRI Defendants' motion to dismiss Plaintiff's CAVRA claim is therefore **DENIED**.

\* \* \* \*

### IV. CONCLUSION

For the foregoing reasons, RRI Defendants' motion to transfer venue or, in the alternative, to dismiss (ECF No. 27) is **DENIED**.

**IT IS SO ORDERED**.

_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: March 31, 2025**